**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) AMBER STEPP, an individual, and as parent and next friend of J.S., a minor child; (2) JONATHON STEPP, an individual, and as parent and next friend of J.S., a minor child; | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:24-cv-00146-JAR |
| (3) INDEPENDENT SCHOOL DISTRICT NO. 52 OF LEFLORE COUNTY, OKLA. a/k/a TALIHINA PUBLIC SCHOOL DISTRICT, an Oklahoma political subdivision; (4) JASON LOCKHART, an individual; (5) SCOTTIE RUSSELL, an individual; (6) STEVE WOODS, an individual; (7) LESLIE CRANK, an individual; (8) RUSTY BLUE, an individual; (9) COURTNEY MORELAND, an individual; (10) KATHY ANDERSON, an individual; (11) KEVIN MCCLAIN, an individual; (12) BILL BLAIR, an individual; and (13) TRACY BRYANT, an individual; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT[1]**

COME NOW, Amber Stepp and Jonathon Stepp, individually and as parents and next friends of J.S., a minor child, Plaintiffs in the above-styled action, and hereby state their respective causes of action against Independent School District No. 52, also and commonly known as Talihina Public School District[2] (hereinafter "Talihina Public School District" or "TPSD"); Jason

---

[1] As directed, Doc. 86, Plaintiffs are also attaching, as **Exhibit 4**, a redline version of the First Amended Complaint showing the changes made herein.

[2] In omitting from this amended complaint their official capacity claims against the individual defendants, Plaintiffs have relied on the position of Defendants, including TPSD itself, that TPSD is the proper entity against which to bring their official capacity claims, that TPSD has capacity to sue and be sued on these

Lockhart; Scottie Russell; Steve Woods; Rusty Blue; Courtney Moreland; Kathy Anderson; Kevin McClain; Bill Blair; and Tracy Bryant:

**JURISDICTION & VENUE**

1.      Plaintiffs Amber and Jonathon Stepp are Talihina residents and have five children, including Plaintiff J.S., a now-thirteen (13) year old boy.  In 2022, Amber and Jonathon made the difficult decision to withdraw their children from Talihina Elementary—but only <u>after</u> Defendants instituted an unconstitutional policy of sex segregation applicable to J.S.'s fifth grade class; <u>after</u> J.S.'s teacher, Defendant Kevin McClain ("McClain"), targeted J.S. with derogatory, harassing language (*e.g.*, "queer") during class, in front of his peers; <u>after</u> Defendants removed J.S. from the classroom in response to Plaintiffs' complaints of discrimination and harassment against McClain; <u>after</u> Defendants conducted a lacking, biased investigation excluding Plaintiffs' participation; <u>after</u> Defendants defamed Plaintiffs for pursuing their complaint against McClain; and <u>after</u> one Defendant intimidated and assaulted Plaintiffs at a school function in further retaliation. Defendants' acts and omissions left Plaintiffs with no choice but to withdraw J.S., and his siblings, from Talihina Elementary, and Plaintiffs bring this suit to enforce their rights under the U.S. Constitution, Title IX of the Education Amendments of 1972, and other applicable federal and state laws.

2.      Defendant Talihina Public School District is a political subdivision and body corporate of the State of Oklahoma, duly created and charged with the operation of Talihina Elementary School. 70 O.S. §§ 1-108, 5-101, 5-103, 5-105.

3.      TPSD is governed and administered by the Talihina Public School Board of Education (the "Board"), *see* 70 O.S. § 5-117, which at present comprises six members: Scottie

---

claims, and that Plaintiffs' prior official capacity claims against the individual Defendants merely duplicated the claims against TPSD. *See, e.g.*, Doc. 29 at 13–14.

Russell (President); Steve Woods (Vice President); Leslie Crank (Clerk); Rusty Blue (Member); Courtney Moreland (Member); and Jason Lockhart (TPSD Superintendent).

4. TPSD adopted, approved, or ratified, a policy permitting Talihina Elementary School to segregate its fifth-grade class by sex, or at least failed to take action preventing such sex segregation despite receiving notice of the same.

5. TPSD, at the same time—and over fifty years after the passage of Title IX—failed to adopt any policy or grievance procedures compliant with Title IX or otherwise properly appoint, designate, and train a Title IX Coordinator.

6. Upon information and belief, Defendant Jason Lockhart ("Lockhart") is an individual residing in Oklahoma who currently serves as superintendent of TPSD and chief executive officer of the Board. *See* OAC 210:35-3-48(b). As superintendent of TPSD, Lockhart is responsible for, among other things, "developing and administering rules and procedures in accord with local board policies for proper operation of schools," "evaluation of school employees," and "administration and supervision of the educational and communications program." *See* OAC 210:35-3-48(b). Lockhart is sued in his individual capacity.

7. Upon information and belief, Defendant Scottie Russell ("Russell") is an individual residing in Oklahoma and serving as President of the Board. As such, Russell is responsible for the governance and administration of TPSD, including Talihina Elementary. 70 O.S. § 5-117(A). Russell is sued in his individual capacity.

8. Upon information and belief, Defendant Steve Woods ("Woods") is an individual residing in Oklahoma and serving as Vice President of the Board. As such, Woods is responsible for the governance and administration of TPSD, including Talihina Elementary. 70 O.S. § 5-117(A). Woods is sued in his individual capacity.

3

9.   Upon information and belief, Defendant Leslie Crank ("Crank") is an individual residing in Oklahoma and serving as a Member and Clerk of the Board.  As such, Crank is responsible for the governance and administration of TPSD, including Talihina Elementary. 70 O.S. § 5-117(A).  Crank is sued in her individual capacity.

10.   Upon information and belief, Defendant Rusty Blue ("Blue") is an individual residing in Oklahoma and serving as a Member of the Board.  As such, Blue is responsible for the governance and administration of TPSD, including Talihina Elementary. 70 O.S. § 5-117(A).  Blue is sued in his individual capacity.

11.   Upon information and belief, Defendant Courtney Moreland ("Moreland") is an individual residing in Oklahoma and serving as a Member of the Board.  As such, Moreland is responsible for the governance and administration of TPSD, including Talihina Elementary. 70 O.S. § 5-117(A).  Moreland is sued in her individual capacity.

12.   Upon information and belief, Defendant Kathy Anderson ("Anderson") is an individual residing in Oklahoma and former principal of Talihina Elementary.  Anderson is being sued in her individual capacity.

13.   Upon information and belief, Defendant Kevin McClain is an individual residing in Texas and an adjunct teacher at Talihina Elementary.  At all times pertinent to the facts and allegations raised herein, McClain taught the all-boys fifth grade class at Talihina Elementary. McClain is being sued in his individual capacity.

14.   Upon information and belief, Bill Blair ("Blair") is an individual residing in Oklahoma and a Title IX Officer for Talihina Elementary.  Blair is being sued in his individual capacity.

15.    Upon information and belief, Tracy Bryant ("Bryant") is an individual residing in Oklahoma and a Title IX Officer for Talihina Elementary.  Bryant is being sued in her individual capacity.

16.    A substantial part of the acts and circumstances giving rise to this dispute occurred in Leflore County, State of Oklahoma, and the claims stated herein arise under federal and state law.

17.    TPSD, as a recipient of federal funds, is subject to the requirements and restrictions on sex discrimination covered by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

18.    TPSD, as a public school district, is subject to the requirements and restrictions on sex segregation and discrimination covered by the Equal Educational Opportunities Act. 20 U.S.C. § 1701 *et seq.*

19.    Jurisdiction and venue are proper in this Court. *See* 28 U.S.C. §§ 1331, 1391.

## FACTUAL BACKGROUND

20.    This case arises out of TPSD's disturbing practice of separating students in Talihina Elementary into different classes on the basis of and *because of* sex—in violation of federal and state law—and the realized consequences of such practice on one particular student: J.S.  Plaintiffs Amber and Jonathon Stepp bring this suit individually and on behalf of J.S., their now thirteen-year-old son and a former fifth-grade student at Talihina Elementary.

## I.    DEFENDANTS' POLICY OF SEX SEGREGATION

21.    Beginning in August 2022, Talihina Elementary—at the direction of Defendants Lockhart and Anderson—implemented a policy providing for the separation of fifth grade students at Talihina Elementary based on their sex.

22.     Pursuant to this policy, Talihina Elementary provided for two fifth grade classes—one exclusively for boys (taught by a man) and another exclusively for girls (taught by a woman).

23.     Upon information and belief, the Board and its members—Defendants Lockhart, Russell, Woods, Crank, Blue, and Moreland (collectively, "Board Members")—were aware of this policy and either explicitly or tacitly approved of the same.

24.     Underpinning Defendants' decision to segregate Talihina's fifth grade class based on sex were offensive and outdated stereotypes about boys and girls, their behavior, and the discipline and instruction permissible for or required for each.

25.     For example, in a written statement provided to Defendant McLemore, Defendant McClain explained:

> The school administration made the decision to separate the boys and girls into two different homerooms for this year and I would teach the boys. I support this decision and believed that having the students in an all boy setting would provide us the opportunity to instruct the students in proper behavior and **I could have some frank conversations that could not take place in a boy/girl mixed setting.**

(Emphasis added.)

26.     This was not an isolated statement of support. McClain and other Defendants have made similar statements in various conversations with Plaintiffs and, upon information and belief, others at Talihina Elementary.

27.     Defendants had no legitimate basis, at law or in fact, to implement a policy of sex segregation at Talihina Elementary subjecting its fifth-grade students to different treatment, rules, standards, *etc.*, based on sex.

28.     After the conclusion of an investigation by the Oklahoma State Department of Education ("OSDE") resulting from Plaintiffs' complaints, Defendants were required to cease their

6

unconstitutional policy of sex segregation. *See* Letter, "Notice of Title IX Noncompliance and Implementation of Corrective Action," attached hereto as **Exhibit 1**.

29.     Upon information and belief, TPSD integrated one fifth grade class period in response to the Letter from OSDE and to comply with its directive, but only after it had forced J.S. out of school.

## II.     DEFENDANT MCCLAIN'S DISCRIMINATORY ACTIONS AGAINST J.S.

30.     Talihina Elementary designated Defendant McClain—a full-time "adjunct" residing in Texas—to teach every subject to the all-male fifth grade class.

31.     In August of 2022, J.S. was eleven (11) years old and heading into his fifth-grade year at Talihina Elementary.

32.     J.S. was assigned to the all-male fifth grade "homeroom" class taught by McClain. McClain was responsible for substantive instruction of core subjects and for supervision of his fifth grade class for all or most of the school day.

33.     J.S. had no option, in attending Talihina Elementary for fifth grade, but to attend the all-male class taught by McClain.

34.     Beginning the first week of school—the week of August 16, 2022—McClain frequently and loudly yelled at the all-boys fifth grade class in general, and at J.S. in particular.

35.     During the first days of school, McClain so loudly and continually yelled at his class that J.S. repeatedly came home and reported the behavior to his parents.

36.     McClain's behavior only escalated.  Through the first weeks of school, McClain increasingly singled out J.S. for repeated and excessive discipline.

37.     On or about August 22, 2022, McClain yelled at J.S. and another boy because the other student was trying to assist J.S. with reading a particular passage after J.S. asked him for

help. McClain yelled in such a loud and violent manner that both J.S. and the other student were reduced to tears in front of all their peers.  In fact, McClain screamed so loudly at J.S. that Plaintiffs' other minor children could hear him from their own separate classrooms.

38.     On or about August 24, 2022, McClain again screamed at J.S., again to the point that he cried.  This occurred after McClain announced to the class that an altercation in which one classmate slapped another did not constitute a "fight."  J.S. questioned McClain's conclusion and McClain responded by aggressively berating J.S. until he broke down in tears.  J.S. was not involved in the underlying altercation.

39.     Later that same day, J.S. began to feel unwell and requested permission of McClain to go to the office or call his dad. McClain refused to permit J.S. to do either, despite his reports of being unwell.  That same afternoon, McClain allowed another student to leave the classroom three separate times, including to get a drink of water, because he was not feeling well.  On information and belief, McClain refused these reasonable requests from an already traumatized child in retaliation for J.S. daring to question him in the earlier conversation about the severity of a physical altercation between children.

40.     On that same evening, August 24, 2022, a concerned parent contacted Amber Stepp about McClain's treatment of J.S.  The parent's own child was in J.S.'s class and had reported McClain's mistreatment to his parents, along with his personal fears of McClain, developed as a result of McClain's treatment of J.S.

41.     The next day, on August 25, 2022, Jonathon Stepp went to TPSD, met with Defendant Lockhart, and reported McClain's targeted and disproportionate treatment of J.S. during class.  During this meeting Jonathon explicitly raised his concerns about his son's safety and wellbeing at school.

42.    TPSD responded by placing a "hall monitor" of sorts (Rowdy Johnson) outside McClain's classroom for the purpose of periodically checking on or watching McClain's interactions with the boys.

43.    To the best of Plaintiffs' knowledge, TPSD took no other action at this time.

44.    During this second week of school, and while TPSD's designated officer was purportedly monitoring McClain's conduct, McClain raised additional inappropriate topics with his all-boys class, including at least a discussion about kissing and about drawings of male genitals. Worse, McClain used these topics to target J.S. for harassment and bullying—pointing at J.S. and telling J.S.'s classmates that they must not draw male genitals because J.S. is "queer." McClain then joined other students in laughing at this comment.

45.    On or around this same date, and after witnessing J.S. and other boys playfully roughhousing, McClain instructed his class that they should yell "f** alert!" any time that another boy unwantedly touched them.

46.    On multiple occasions, McClain has admitted to making this statement.

47.    McClain's public comments, at the least, resulted in uninvited speculation and curiosity amongst J.S.'s classmates (and others in the local community) as to J.S.'s sexuality—a subject on which J.S., who was 11 at the time and is now only 13, has never initiated or invited public discourse.

48.    Demonstrating the danger of TPSD's policy of sex-based discrimination, McClain later acknowledged that the foregoing statements would be inappropriate if he had been teaching any integrated class or had been in the presence of female students. But he has maintained that it was permissible for him to make these comments so long as he was in an all-boys environment. *See* ¶ 25 *supra*.

49.     At the time that Jonathon Stepp met with Defendant Lockhart on or about August 25, 2022, he did not yet know about McClain's targeted use of derogatory and sexually harassing language toward J.S.

50.     Around this same time, J.S. returned from school and told his dad that a classmate had advised J.S. that the next time McClain called him a "queer," J.S. should respond by calling McClain a different homophobic slur, not repeated here.

51.     Shocked at this language, Jonathon pulled J.S. away from his siblings and asked him where he learned these words and whether he knew what they meant.  J.S. reported that he had learned these terms from McClain and that he did not really understand their meaning.

52.     Jonathon then explained these words to J.S., who immediately began to cry. J.S. began asking why McClain would refer to him using these words.

53.     It was at this point that J.S. relayed to Jonathon other concerning behavior by McClain, as described in ¶¶ 44–50.

54.     Jonathon immediately attempted to call Talihina Elementary after this conversation, but the school was already closed.

55.     On or about the same date Jonathon learned of McClain's name-calling and use of slurs, Amber separately learned from a grandparent of a classmate of J.S. that McClain was targeting J.S. with harassing and violent behavior.

56.     As Amber heard from this concerned grandparent, McClain was repeatedly singling out J.S. for correction and yelling at him during class, in front of his peers.  According to the concerned grandparent, McClain so violently yelled at J.S., and in a manner so severe, that her grandson was "scared" of McClain and felt "unsafe" in his classroom.

10

57.    According to another classmate of J.S.'s, McClain's yelling was "violent" and out of the ordinary, and the same was regularly directed at J.S.

58.    According to yet another classmate, McClain would yell so violently at J.S. that the classmate would get goosebumps.  On one particular occasion, this student found himself in the middle of McClain and J.S. as McClain screamed at J.S. during class.  During the episode, McClain so violently yelled at J.S. that McClain repeatedly spat on this student.

59.    One or more of J.S.'s classmates expressed to their parents or guardians fears for J.S.'s safety and their own in McClain's class as a result of his behavior directed at J.S.

### III.    PLAINTIFFS' MEETING WITH TPSD ADMINISTRATORS AND FILING OF FORMAL COMPLAINT

60.    On or about August 25, 2022—after learning about McClain's abusive treatment and use of slurs—Plaintiffs reached out to McClain directly and asked him for an opportunity to speak with him.  McClain called the Plaintiffs, they confronted him about his behavior, and he denied doing anything wrong.

61.    On that call, McClain *did* admit to using the phrase "f** alert," and to yelling at J.S. and other boys in the class, but maintained this behavior was all for the purposes of "correcting" their behavior.

62.    On this same call, McClain admitted to talking with the children about drawing penises in notebooks, but defended the statement by saying that "maybe [J.S.] is not mature enough to handle it."

63.    On this same call, after receiving Plaintiffs' complaints about his violent yelling, use of slurs, *etc.*, McClain suggested that—instead of just yelling to discipline J.S. in the future—he would instead send J.S. to Defendant Anderson's office for corporal punishment, or as he described it, to get "paddled."

11

64.     On this same call, McClain acknowledged that he knew his conduct was generally inappropriate for a fifth grade class and that he would not have used certain terms or raised certain topics had fifth grade *girls* been present.

65.     Sometime between August 25 and August 29, 2022, McClain called Defendant Anderson to inform her of Plaintiffs' intention to file a formal complaint under Title IX.  Upon information and belief, Defendants Anderson, McClain, Lockhart, and others spoke during this timeframe about Plaintiffs' concerns with McClain's behavior and coordinated on what to do next and how to deal with Plaintiffs' complaint of sexual harassment.

66.     Following their call with McClain, on or about August 29, 2022, Plaintiffs Amber and Jonathon Stepp met with Defendants Lockhart, McClain, McLemore, and non-party Rowdy Johnson.[3]   In this meeting, Plaintiffs relayed their complaints, requested information from Lockhart and McLemore concerning *how* to file a formal Title IX complaint, and asked about contacting the Board.

67.     Defendants offered little to no information to Plaintiffs about Title IX or the school's grievance procedures.

68.     McClain, in this meeting, maintained his defensive posture—acknowledging again that he *did* use inappropriate language, but denying it was uniquely directed at J.S.

---

[3] For at least some duration of time between August 1, 2022, and September 8, 2022, and on account of Anderson recovering from a bout of COVID-19, Johnson served as acting principal for Talihina Elementary.  Upon information and belief, and based on information currently known, Johnson remained in contact with Anderson and other Defendants named herein concerning the content of Plaintiffs' Title IX complaint and the allegations raised against Defendant McClain, received instructions from and deferred to Anderson, and did not exercise independent judgment or authority over the handling of Plaintiffs' complaint of sexual harassment.

69.    McLemore, a Title IX Officer for Talihina Elementary and the person apparently charged with investigating Plaintiffs' complaint, was not allowed by Defendant Lockhart to speak during this meeting or answer any questions posed by Plaintiffs.

70.    At the meeting, McLemore did herself ask Defendant Lockhart one or two basic questions about her responsibilities as the Title IX Officer.  In doing so, McLemore demonstrated that she was not actually familiar with TPSD's grievance procedure(s) for handling complaints of harassment.

71.    After the meeting, and on the same date, Defendant McLemore called Amber Stepp to apologize.  In this same call, McLemore expressed that she had no idea why she had been called into the meeting on August 29, 2022.  At this point, McLemore requested that Plaintiffs return to TPSD to complete an Incident Report/Form concerning the allegations against McClain.

72.    As requested, Plaintiffs completed an "ALLEGED SEXUAL HARASSMENT FORM" provided by Talihina Public Schools, therein briefly describing portions of the conduct discussed at the meeting (the "Form").

73.    Though this Form says nothing about Title IX, or Plaintiffs' rights thereunder, it was the form Plaintiffs were instructed to use, and it served as Plaintiffs' formal complaint of sexual harassment under Title IX and was treated as such by Defendants.

74.    McLemore received and signed the Form.

75.    On the same date, McLemore provided to Defendant McClain a "Notice of Sexual Harassment Complaint."  Plaintiffs did not receive a copy of this document or any similar documents.

76.     Other than the Form, which Plaintiffs submitted to initiate a Title IX Process, Plaintiffs did not receive any notice or instruction concerning Talihina Elementary's grievance process or its procedure for resolving formal complaints under Title IX.

77.     Despite Plaintiffs' specific requests for Title IX information, Defendants failed to provide Plaintiffs a copy of any Title IX Policy adopted and implemented by Talihina Elementary or TPSD.

78.     Upon information and belief, Defendant TPSD does not have any official Title IX policy and otherwise fails to provide "prompt and equitable" grievance procedures relating to sexual harassment, at least at Talihina Elementary.

79.     Upon information and belief, on the date Plaintiffs initiated their formal complaint, TPSD had not trained *any* Title IX personnel on the rules and regulations governing Title IX and its grievance procedures.

80.     Upon information and belief, TPSD maintains only a sexual harassment and bullying policy in lieu of a Title IX policy, which does not comply with the requirements of Title IX and the specific regulations promulgated thereunder.

81.     Defendants failed to include in any notice to Plaintiffs (or Defendant McClain, for that matter) the complete allegations raised by J.S., as discussed in the August 29, 2022, meeting.

82.     Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were never informed as to the identity of the Title IX Coordinator designated by Talihina Elementary. *But see id.* § 106.8(a)–(b).

83.     It remains unclear whether Talihina Elementary designated anybody to fill this specific position.

84.    Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were not notified by any Defendant of their right under Title IX to "an advisor of their choice, who may be . . . an attorney." 34 C.F.R. § 106.45(b)(2)(*i*)(B).[4]

85.    As a consequence, Plaintiffs did not retain any advisor to assist in navigating Talihina Elementary's rapid, biased, and fraught Title IX process.

86.    Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were not notified by any Defendant of their right to inspect and review evidence gathered during the course of the Title IX proceeding. *But see id.* §§ 106.45(b)(5)(vi*)–(vii).* Plaintiffs, resultingly, never saw any evidence gathered during the course of the Title IX investigation.

87.    Upon receiving an Open Records Request ("ORR") from Plaintiffs, Defendant TPSD released *some* documents relating to the Title IX investigation.  But it is apparent such production is not complete.

88.    As an example, Plaintiffs only received one Title IX "Contact Sheet," which was completed by Defendant McLemore prior to her resignation.  Plaintiffs never received any Contact Sheet relating to Blair's or Bryant's activities in connection with Plaintiffs' formal complaint.

89.    Similarly, at least one document received in response to Plaintiffs' ORR indicates that Blair and Bryant received parental consent to interview a minor witness.  However, Defendants' response to Plaintiffs' Records Request is devoid of any record of such an interview.

---

[4] References to the Title IX regulations are to those enacted in 2020 and in place at the time of the relevant events. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance (Final Rule), 85 Fed. Reg. 30,026 (May 19, 2020) (subsequently codified at 34 C.F.R. 106). Although these regulations were subsequently amended by the Biden Administration, such amendment did not occur until April 2024, after the pertinent timeframe.

(These documents are not the only indications that the items produced by Defendants to date pertaining to the Title IX investigation are incomplete.)

90.    Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were not notified of the standard of evidence to be used by Talihina Elementary in determining whether a violation of Title IX had actually occurred. *But see id.* § 106.45(b)(1)(vii).   To this date, it is unclear what standard of evidence (if any) Defendants adhered to in handling Plaintiffs' complaint of sexual harassment.

91.    Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were never informed as to any confidentiality protections afforded in connection with Talihina Elementary's investigation of the formal complaint. *See, e.g., id.* §§ 106.30(a), 106.71(a).

92.    Because Plaintiffs received neither a copy of any Title IX policy nor any notice of their rights under Title IX, they were never informed of J.S.'s right under Title IX to "non-disciplinary, non-punitive" supportive measures "designed to protect the safety of all parties or the recipient's learning environment, or deter sexual harassment," or TPSD's obligation to provide the same. *Id.* §§ 106.30(a) (defining supportive measures); *see also id.* §§ 106.44(a), 106.45(b)(1)(i), (ix).

93.    During the investigation, and after Plaintiffs' submission of the Form, Defendants failed to offer Plaintiff J.S. any supportive measures intended to restore or preserve J.S.'s equal access to Talihina Elementary's educational offerings and fifth grade program; or protecting J.S.'s safety.

94.    In fact, on August 29, 2022, and in response to Plaintiffs' report of harassment, TPSD removed J.S. from the classroom and sent him home with a single sticky note of instruction, no books, and no way to complete his work.

95.    Later this same date, Defendant Russell contacted Plaintiffs from TPSD about picking up J.S.'s books.

96.    Pending resolution of the investigation, Defendants—over Plaintiffs' objection—refused to remove McClain from the all-boys fifth grade classroom.

97.    As the investigation was ongoing, and in realizing TPSD would not remove McClain from the classroom, Plaintiffs declined to send J.S. back into the same, citing concerns for J.S.'s safety and well-being, the filing of the formal complaint, and fears of potential retaliation by McClain.

98.    Plaintiffs insisted to Defendants that J.S.'s removal from McClain's class altogether—and without an equitable alternative for in-person learning—was the equivalent of punishing J.S. for reporting McClain's behavior.

99.    As the only alternative for in-person learning, Defendants proposed putting J.S. in the all-girls fifth grade classroom.  Plaintiffs refused this offer because such placement would only further stigmatize and harm J.S and further ostracize him from his peers.  Plaintiffs again objected to the segregation of classes based on sex and noted such segregation left J.S. with no options for fair and equitable instruction under the circumstances.

100.    As an alternative to placement in the all-girls classroom, Defendant Anderson eventually worked with Plaintiffs to set J.S. on a modified school schedule, wherein J.S. would attend only one period of classroom instruction (Language Arts) with approximately half of the boys in his class and would, for the remainder of the school day, be kept in the library, sometimes

17

alone and sometimes with a handful of other students (not necessarily other fifth graders). In essence, J.S. would no longer receive regular classroom instruction—including instruction and assistance necessary to the fulfill J.S.'s Individualized Education Program ("IEP").

101. Because there were no other in-school options—no integrated classroom, and no boys room taught by anyone other than McClain—Plaintiffs had no choice but to accept Defendants' proposal for this "modified schedule."

102. During this time, and while the investigation was ongoing, J.S. received little to no help or instruction from teachers in relation to any subject. His receipt of homework or other class assignments was often delayed (and sometimes school personnel forgot to give J.S. his assignments at all).

103. As a result of his unequal treatment, J.S.'s grades dropped.

104. Despite depriving J.S. of educational opportunities and meaningful instruction, the school also removed J.S. from his extracurricular activities, such as basketball, on the pretextual basis of his lowering grades, thereby further ostracizing J.S. from his peers.

105. Defendants' deployment of the modified schedule, further, resulted in J.S. not receiving the assistance provided for in his IEP—even after the Parties officially modified the same to reflect J.S.'s modified schedule.

## IV.    MCLEMORE'S INITIAL INVESTIGATION AND SUDDEN RESIGNATION

106. After the Parties' August 29, 2022, meeting, McLemore requested and received the Form from Plaintiffs and initiated an impromptu Title IX investigation. In a short timeframe thereafter, McLemore spoke with several persons about Plaintiffs' Complaint, including Plaintiffs Amber and Jonathon Stepp and Defendants McClain, Lockhart, Anderson, and Blair.

18

107.    On or about August 30, 2022, McLemore met with Anderson concerning Plaintiffs' allegations against McClain.

108.    During that meeting, Anderson mentioned to McLemore a text message from McClain wherein he characterized Plaintiffs' complaints as stemming from his "discipline techniques" and criticized Plaintiffs for allegedly reaching out to other parents to find "some dirt on him."

109.    Anderson also mentioned communications between herself and Lockhart, as well as communications between Lockhart and Defendant Russell, President of the Board, concerning Plaintiffs' formal complaint and the allegations raised therein.

110.    Anderson—unprompted—also raised with McLemore various issues she had with Plaintiffs' *other* children (not J.S.).  On her Title IX "Contact Sheet," McLemore even made a "personal note" stating: "I am unsure why anything about the brothers was even brought up by [Anderson] as it is completely unrelated to the current complaint."

111.    During that same meeting, Anderson confirmed she would provide to McLemore a "typed up" document memorializing her communications with McClain, including the date and time of the calls and texts shared between the two.

112.    Just two days later, on September 1, 2022, McLemore followed up with Anderson about her communications with McClain (concerning the Title IX Investigation) and requested any notes reflecting the same.

113.    Anderson, at this point, refused to provide McLemore with any notes or other documents memorializing her conversations with McClain or concerning the allegations raised by Plaintiffs.  According to a Title IX Contact Sheet completed by McLemore, Defendants Lockhart and Anderson had separately discussed and decided that Anderson's notes and recollection were

not needed for the Title IX investigation, and that Lockhart's notes and statement alone were sufficient. From that point forward, Anderson refused to cooperate with her own school's Title IX investigation.

114. On September 1, 2022, McLemore requested and received permission from a grandparent to interview at least one classmate of J.S.'s; to the best of Plaintiffs' knowledge, that interview was never conducted.

115. On or about September 6, 2022, Plaintiffs—accompanied by parents and grandparents of other children in J.S.'s class—attended a public TPSD Board of Education Meeting. There, Plaintiffs presented to the Board their concerns with McClain's behavior and bullying of J.S. and with Talihina Elementary's ongoing policy of sex segregation. Plaintiffs also lamented that J.S. was removed from his class while McClain remained. Other parents and grandparents at the meeting corroborated Plaintiffs' experiences with McClain and shared the concerns and fears of their own children and grandchildren.

116. Defendant Board Members heard Plaintiffs' presentation but asked no questions, made no comments, and offered no solutions.

117. The Board, after the meeting, declined to take any action or vote concerning either McClain's treatment of J.S. and other students *or* Talihina Elementary's underlying policy of sex discrimination and segregation.

118. On September 8, 2022, McLemore abruptly resigned as Title IX Officer for Talihina Elementary, and informed Lockhart that she would "not continue as an investigator on this case."

119.    In doing so, McLemore explained: "[I]t is very apparent to me that I am not qualified to fulfill this position.  I believe to continue in this role would set me in a place of ethical and professional liability."

## V.    TALIHINA ELEMENTARY'S INADEQUATE TITLE IX INVESTIGATION

120.    Even prior to McLemore's resignation, the Title IX proceeding administered by TPSD had been inadequate.  But after her departure, the remaining Defendants involved did everything possible to undercut the ongoing investigation.

121.    After McLemore's resignation, Defendants Blair and Bryant—an apparently new Title IX Officer—completed the Title IX investigation initiated by Plaintiffs.

122.    In doing so, Defendants TPSD, Blair, and Bryant failed to follow basic regulations governing the application and implementation of Title IX in elementary and secondary schools, as further described herein. *See generally* 34 C.F.R. § 106.45 (Grievance Process for Formal Complaints of Sexual Harassment).

123.    Upon information and belief, Bryant and Blair interviewed several witnesses identified in this investigation, including some of J.S.'s classmates.  But Defendants TPSD, Blair, and Bryant failed to interview J.S. or his parents.

124.    Defendants TPSD, Blair, and Bryant either declined to interview the parent(s) or guardian(s) of the children who reported McClain's behavior or failed to make and/or provide to Plaintiffs any record such interviews.  These interviews would have been critical to collecting contemporaneous accounts of child witnesses, corroborating Plaintiffs' reports, and establishing an accurate timeline of events.

125.    Blair and Bryant failed to provide Plaintiffs with any transcript or recording of any statement provided by any witness during the course of the Title IX investigation.

21

126.    Only *after* the close of the Title IX investigation, *after* Plaintiffs obtained counsel, and *after* Plaintiffs submitted an Open Records Request, did Plaintiffs receive some handwritten notes transcribing details learned during witness interviews by Title IX Officers Blair and Bryant.

127.    Plaintiffs have no idea what questions Blair and Bryant asked, what any witness actually said in response to such questions, whether any witness was confronted with prior inconsistent statements, or even whether the notes provided omit any relevant information provided by those interviewed.

128.    Before issuing an investigative report, Defendants TPSD, Blair, and Bryant failed to provide Plaintiffs with *any* opportunity to review the evidence gathered during the course of the investigation or to offer additional evidence. *But see* 34 C.F.R. § 106.45(b)(5)(vi). Moreover, Defendants TPSD, Blair, and Bryant appeared to ignore or avoid interviewing corroborating witnesses. *See* ¶¶ 124–27 *supra*.  TPSD, resultingly, failed to consider any response by Plaintiffs concerning the evidence gathered. *Id.*

129.    Defendants TPSD, Blair, and Bryant failed to complete or provide to Plaintiffs any "investigative report [] fairly summary[zing] relevant evidence" relating to Plaintiffs' formal complaint. 34 C.F.R. § 106.45(b)(5)(vii).

130.    Plaintiffs were not at any time permitted to review the Title IX Officers' evidence file or any resulting investigative report or findings.

131.    By failing to provide any investigative report, Defendants TPSD, Blair, and Bryant wholly failed to comply with the requirements stated in 34 C.F.R. § 106.45(b)(6)(ii) by: (a) failing to provide Plaintiffs the ability to review any evidence intended to support the Title IX Officers' determination of responsibility or non-responsibility; and (b) failing to afford Plaintiffs the

opportunity to submit written questions they wanted asked of any party or witness to the Title IX proceeding, and thereafter review and follow-up on the answers to such questions.

132. No written determination regarding responsibility was issued and no findings relating to responsibility (or non-responsibility) were relayed to J.S. or his family. *But see* 34 C.F.R. § 106.45(b)(7).

133. Instead, Plaintiff Jonathon Stepp received a phone call from Defendant Anderson on or about September 17, 2022, notifying him that the investigation had closed and that no other information would be provided to him or his family.

134. Upon information and belief, TPSD only made this call at the suggestion or direction of OSDE. Plaintiffs did not receive any description of the steps taken to reach a determination, any findings of fact or conclusions regarding the application of TPSD's purported Title IX Policy to the facts presented, or any explanation or rationale underlying TPSD's determination of responsibility or non-responsibility.

135. Plaintiffs did not receive any information about their right to appeal the determination made by TPSD, including their right to appeal on the basis of the Title IX Officers or decision-maker(s) having a conflict of interest or demonstrated bias for or against complainants generally or Plaintiffs specifically. *See* 34 C.F.R. § 106.45(b)(8)(iii). Defendants, rather, stated that any decision rendered was "final."

136. In connection with her announcement of the conclusion of the Title IX process, Anderson informed Plaintiffs that any modified schedule previously offered to accommodate J.S. during the course of the Title IX investigation was revoked and that J.S. would be expected to return to in-person instruction in McClain's all-boys class, effective immediately.

137.     Throughout the Title IX process, in defense of its silence and lack of transparency, TPSD administrators cited an erroneous interpretation of the Family Educational Rights and Privacy Act (FERPA) as justification for withholding information relevant to the grievance process from Plaintiffs. *But see* 34 C.F.R. § 106.6(e) ("The obligation to comply with this part is not obviated or alleviated by the FERPA statute, 20 U.S.C. § 1232g, or FERPA regulations, 34 CFR Part 99.").

## VI.    J.S.'S RETURN TO SCHOOL AND DEFENDANTS' RETALIATION

138.     Unbeknownst to Plaintiffs at the time, on September 29, 2022, the OSDE sent a Letter to Defendants Lockhart and TPSD advising that Talihina Elementary's policy of segregating its fifth-grade classes on the basis of sex violates federal civil rights laws, including Title IX, and that "immediate corrective action is required to ensure all students receive equitable educational opportunities." *See* Letter, attached hereto as **Exhibit 1**.

139.     The OSDE attached guidance to this Letter from almost ten years prior, evidencing Talihina Elementary's (and Defendants') clear violations of well-established principles of law.

140.     The Letter also identified specific concerns "about statements made by District educators indicating that there was in fact an intent to treat Talihina's 5th grade boys and girls differently."

141.     The Letter, to conclude, directs that Talihina Elementary must "integrate its 5th grade educational environment [by] no later than October 10, 2022."

142.     Upon information and belief, Talihina Elementary and its administrators—many of whom have voiced continued support for the segregation of Talihina Elementary's fifth-grade classes on the basis of sex—did the bare minimum to comply with this directive, as described herein.

143.    After receiving the Letter from OSDE, Anderson sent out communications of her own to the parents and guardians of each fifth-grade student. Par for the course at Talihina Elementary, however, boys and girls received different versions of the letter.

144.    A letter from Anderson provided to at least one of J.S's female classmates makes fairly clear that Talihina Elementary did as little as possible to comply with OSDE's directive (or, arguably, did not comply at all), citing supposed disruption to the girls' schedule:

> In order to comply to a notification from the Oklahoma State Department of Education, Talihina Elementary School will transition our present 5th grade classrooms to an integrated 5th grade environment.
>
> In order not to cause a dramatic change to your daughter's educational process implementing this directive, [REDACTED] will be moved **for one class period only out of her present classroom setting to comply with this directive**.
>
> [REDACTED] will change for one class period on one of her core subjects. The 5th grade core subjects are Math, Reading/Writing, Science, and Social Studies.
>
> [REDACTED] will remain in her present classroom setting for all other classes.

*See* **Exhibit 2**, attached hereto (including the aforementioned letter *and* the different letters sent to fifth grade boys) (emphasis added).

145.    After hearing of Talihina Elementary's forced integration, Plaintiffs were finally able to place J.S. into an *integrated* fifth grade class *not* taught by Defendant McClain.

146.    In response to the Letters identified in ¶¶ 145–46, parents unsurprisingly asked questions of TPSD, Anderson, and the other Defendants, and demanded an explanation for the sudden change in their kids' respective schedules. Upon information and belief, one or more parents requested that their children *not* be in McClain's class.

147.     In response to these questions, as Plaintiffs later learned, Anderson **named** J.S. to the inquiring parents, blaming Plaintiffs in order to deflect other parents' aggravations with Talihina Elementary and McClain.  Anderson, in these conversations, apparently pressed her view that Plaintiffs' allegations against McClain were unsubstantiated and lamented that Plaintiffs had continually pressed OSDE for action, thus causing otherwise unwanted disruptions to other students' schedules.

148.     On October 10, 2022, Jonathon Stepp met briefly with Anderson, intending to ask about her statements to other parents Plaintiffs and their family.

149.     In the meeting, Anderson said the other parents were lying, then accused Jonathon himself of lying "throughout this process" and called him a "liar."

150.     In the same meeting, Anderson defended the school's policy of sex segregation and stated that other than from Plaintiffs there had been "no complaints" about it.

151.     In the same meeting, Anderson raised irrelevant issues concerning J.S.'s younger siblings, seemingly as a defense to Defendants' conduct in connection with Plaintiffs' formal complaint and TPSD's subsequent investigation.

152.     In the same meeting, and without basis in fact, Anderson accused Plaintiffs of "inciting" and "encouraging" violence against Talihina Elementary and even causing a "lockdown" at the school.

153.     On October 12, 2022, J.S. returned to school for his first full day of in-class instruction.  For the first half of the day, J.S. would receive instruction from Mrs. Austin, a non-party to this suit; for the second half of the day, J.S. would receive instruction from Defendant Blair.

154.     Unfortunately, on his first day back J.S. was retaliated against.

26

155. For at least two of J.S.'s classes in the afternoon, Defendant Blair—who teaches fifth-grade social studies and science—required J.S. to sit on the floor as opposed to at a desk or a table. During the first half of the day (as Mrs. Austin taught the class), J.S. *had* a desk in the same room; but curiously, that desk was unavailable to J.S. after he returned from lunch and recess.

156. When another student offered to provide J.S. his desk, Defendant Blair interjected to prevent this kindness, stating that J.S. was fine without a desk.

157. Later that same afternoon, Defendant Bryant walked into the classroom and saw J.S. sitting on the floor. She asked, "Do y'all need a table?" J.S. noted, in response, that he needed a desk. Bryant left but never returned with anything.

158. Thereafter, nothing was said; nothing was done. J.S. continued to sit on the floor in Blair's class, a needless reminder to him and his peers that J.S. was to be ostracized and punished.

159. The following week, the entire Stepp family attended a basketball game in Whitesboro, OK. J.S. (after previously being ineligible) was expected to play. At the game, Jonathon Stepp saw Defendant Blair and asked him about J.S. being required to sit on the ground the prior week.

160. Blair, at first, seemed to ignore Jonathon. But at some point, Blair rushed at the Stepp family, leaned over them in the bleachers, and got into Jonathan's face. Blair was then joined by his own family members and the group, still at a school function, engaged in a profanity-laced tirade against Jonathon and his family, which included both physical threats (*e.g.*, "Why don't you just bring your a\*\* outside?" and "You just need to keep your f\*\*\*\*\*\* mouth shut.") and defamatory statements about J.S. (*e.g.*, "He is a liar.").

27

161. Not only was Blair's yelling publicly conducted and at a school event, but it was performed in front of Plaintiffs' other minor children, all of them even younger than J.S., with Blair leaning over them to yell at their parents.

162. Blair's behavior was so out-of-line that Rowdy Johnson, as well as certain Whitesboro Elementary officials, approached and attempted to de-escalate the situation, after which they escorted Blair and his family members from the gym.

163. After Blair exited the gym, Plaintiffs recall that Blair and his family lingered outside the gym for some time. Plaintiffs were worried to leave the gym with their young children after the game, and were cautious to make sure that Blair had departed before taking their family outside.

164. Plaintiffs ultimately exited the gym through a back door so as to avoid a confrontation with Blair and his family.

165. Plaintiffs, needless to say, did not feel safe around Blair after this confrontation and worried about his threats.

166. Given (a) Talihina Elementary's inadequate Title IX policies and procedures, (b) J.S.'s ongoing inequitable and disparate treatment by TPSD officials; (c) Defendants' unsubstantiated accusations against Plaintiffs of dishonesty and criticism for pursuing a formal complaint; and (d) Defendants' other acts of retaliation against J.S. and his family (including, *e.g.*, the Title IX Officer forcing J.S. to sit on the floor during classroom time and the same Title IX Officer's violent outburst at the Whitesboro basketball game), it became abundantly clear to Plaintiffs that J.S. would not receive fair and equitable treatment at Talihina Elementary— especially through any Title IX process.

167.    Plaintiffs, further, determined that they were not welcome at TPSD or its public functions and could not, in the future, safely report any issues of sexual harassment or bullying, even if true.

168.    Plaintiffs, as a result, were forced to pull J.S. and his siblings from Talihina Elementary—the only public school in the immediate vicinity—altogether.

169.    J.S., to this day, remains homeschooled, as do his four younger siblings.

170.    J.S., as a result of Defendants' conduct, suffered (and continues to suffer) social isolation and ostracization from his peers, and has been deprived of a free, fair, and equitable public education in his local community.

171.    J.S., as a result of Defendants' conduct, suffered (and continues to suffer) emotional harm and damages, including feelings of shame, guilt, frustration, sadness, and others which no child should have to experience.

172.    J.S., as a result of Defendants' conduct, has been forced to confront uninvited questions about his sexuality—a subject which, prior to McClain's comments, J.S. had never raised with his friends or family—and otherwise navigate the complexities of being involuntarily labeled a "queer" or a "f**" in a small town.

173.    Pursuant to the requirements stated in the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq.* ("OGTCA"), Plaintiffs sent a Letter to Defendants on July 28, 2023, providing formal notice of Plaintiffs' intention to pursue various tort claims against the State of Oklahoma or a political subdivision thereof.  **Exhibit 3**, attached hereto.

174.    Defendants did not provide any response to Plaintiffs' Letter within ninety (90) days—that is, by October 26, 2023.  Accordingly, Plaintiffs' claims for damages were deemed denied by operation of law. *See* 51 O.S. § 157(a).

29

175.    Plaintiffs have timely filed this lawsuit within one hundred eighty (180) days, as required under the OGTCA. *Id.* § 157(b).

### FIRST CAUSE OF ACTION
VIOLATION OF 20 U.S.C. § 1681 *ET SEQ.* (TITLE IX)
(J.S. AGAINST TALIHINA PUBLIC SCHOOL DISTRICT)

176.    Plaintiffs hereby incorporate ¶¶ 1–175 above as if fully set forth and restated herein.

177.    By providing for classes separately at Talihina Elementary on the basis of sex and by requiring and refusing student participation in classes on the basis of students' sex, TPSD discriminated against Plaintiff J.S. on the basis of his sex and in violation of Title IX.

178.    TPSD, in separating the fifth-grade boys from the fifth-grade girls, acted with actual notice of and deliberate indifference to the rights of J.S.

179.    TPSD implemented its policy of sex segregation intentionally, willfully, and in disregard of the rights of Plaintiff J.S.

180.    As a result of TPSD's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary.

181.    As a result of TPSD's actions, J.S. did not receive the benefit of an educational environment that included students of both sexes and suffered the detriment of an educational environment in which teaching staff expressly approached education differently than they would in an integrated educational environment.

182.    As a result of TPSD's actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

183.    As a result of TPSD's actions, Plaintiffs have suffered reputational harm and stigma in their local community.

## SECOND CAUSE OF ACTION
### VIOLATION OF 20 U.S.C. § 1681 *ET SEQ.* (TITLE IX)
### (J.S. AGAINST TALIHINA PUBLIC SCHOOL DISTRICT)

184.    Plaintiffs hereby incorporate ¶¶ 1–183 above as if fully set forth and restated herein.

185.    TPSD's actions in furtherance of, and its failure to act against, McClain's known pattern of unwelcome behavior against J.S. amounts to unlawful sexual harassment and discrimination on the basis of sex for which TPSD is liable under Title IX.

186.    In additional, at all times pertinent hereto, McClain acted as an agent or employee of TPSD.  The acts and/or omissions of McClain, therefore, may be considered the acts or omissions of TPSD.

187.    McClain harassed or discriminated against J.S. by: (a) calling or referencing J.S. as "queer," "f**," or other derogatory terms in class, in front of his peers; (b) discussing or instructing as to inappropriate and sexual topics in class, some of which were previously unfamiliar to J.S. at the age of 11 (*e.g.*, kissing, drawing penises in notebooks, use of slurs and sexual language); (c) violently screaming and yelling at J.S., including in a manner disproportionate to that of his peers; and (d) withholding privileges from J.S. (such as going to the office when) without justification and while, at the same time, permitting other similarly situated students to use such privileges.

188.    McClain's conduct was sex-oriented in nature and/or directed at J.S. because of his sex, gender performance, and/or assumptions about J.S.'s sexual orientation.

189.    McClain's actions were sufficiently severe and pervasive to create an abusive and hostile learning environment unfit for J.S. and his classmates.

190.    TPSD's policy of sex segregation in its fifth-grade class enabled and contributed to McClain's behavior described herein.  Its policy of segregation on the basis of sex in and of itself violates the requirements of Title IX and Plaintiffs' constitutional rights.

191.    At the time of at least some of the actions identified in ¶ 187 herein, TPSD administrators and officials (*e.g.*, Defendants Lockhart, Anderson) had already received notice from Plaintiff Jonathon Stepp of McClain's harassing and discriminatory behavior toward J.S.

192.    After receiving a formal complaint concerning McClain's treatment of J.S., TPSD acted in a clearly unreasonable manner and with deliberate indifference, further violating J.S.'s rights under Title IX and subjecting him to the risk of future harm.

193.    At all times pertinent hereto, TPSD had no policy prohibiting discrimination on the basis of sex and complying with the requirements of Title IX, no "prompt and equitable" grievance procedures for resolving a Title IX complaint, and no properly designated Title IX Coordinator charged with managing TPSD's Title IX compliance efforts. *But see* 34 C.F.R. §§ 106.8(a)–(c).

194.    As a result of these failures, TPSD undertook an impromptu and biased investigation clearly unreasonable under the circumstances, and which was deficient in at least the following respects:

(i)     Prior to Plaintiffs' filing of the formal complaint, TPSD officials assigned to investigate the same—Defendants McLemore, Blair, and Bryant—had received no training concerning the requirements of Title IX or the appropriate processes to be followed thereunder.

(ii)    TPSD failed to advise Plaintiffs of their right to an unbiased and conflict-free investigation and then failed to conduct such an investigation.

(iii)   TPSD failed to advise Plaintiffs of their right to an advisor (including an attorney, if chosen).

(iv)    TPSD failed to advise Plaintiffs of their right to review evidence and otherwise participate in the investigative process and then failed to provide Plaintiffs an opportunity to do so.

(v)     TPSD failed to advise Plaintiffs of their right to receive findings and conclusions relating to TPSD's determination of responsibility or non-responsibility, and explanations for such findings.

*(vi)*     TPSD failed to advise Plaintiffs of their right to reasonable supportive measures during the pendency of the Title IX investigation and failed to supply such measures.

*(vii)*     TPSD failed to advise Plaintiffs of their right to confidentiality and failed to keep confidential the facts of the Title IX investigation, including by identifying J.S. and his parents as the Complainants in an investigation to individuals not involved in the investigation.

*(viii)*     TPSD failed to advise Plaintiffs of their right to appeal any determination of responsibility (or non-responsibility) under Title IX or the potential reasons justifying such an appeal.

*(ix)*     TPSD failed to advise Plaintiffs of their right to be free from retaliation in connection with Plaintiffs' submission of a formal complaint under Title IX and actually retaliated against Plaintiffs. *Supra* ¶¶ 139–173 herein.

*(x)*     TPSD failed to ensure a division of duties and obligations among its Title IX Officers (*i.e.*, between the Title IX Coordinator, investigator(s), and decision-makers) or to ensure they were free from bias or conflicts of interest. *See, e.g.*, 34 C.F.R. § 106.45(b)(1)(iii), 106.45(b)(7)(i).

*(xi)*     TPSD, before concluding the Title IX investigation, failed to provide Plaintiffs with any evidence, investigative report, or written findings and conclusions concerning Plaintiffs' formal complaint under Title IX. To this date, Plaintiffs have yet to receive any such documentation.

*(xii)*     TPSD's investigative process demonstrated both a general bias against Title IX complainants and specific bias against J.S. and his family. Plaintiffs believe conflicts of interest existed from the start of the investigation or, at the least, arose during the course of the investigation.

195.  By failing to comply with its obligations under Title IX, TPSD implemented a *de facto* policy and official practice of deliberate indifference to sexual harassment on its campus and to reports of sexual harassment by students. This policy emboldened (and could still embolden) perpetrators of sexual harassment—like McClain—to operate with impunity and without fear of consequences.

196.    By failing to comply with its obligations under Title IX, TPSD exposed J.S. to an increased risk of future harm at the hands of McClain and others—including those who participated in retaliation against Plaintiffs and those in the community who have been told that J.S. is a liar, complainer, *etc*.

197.    As a result of TPSD's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

198.    As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

199.    As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

200.    As a result of TPSD's actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

201.    As a result of TPSD's actions, including Anderson and Blair's claims that Plaintiffs lied in the course of the Title IX investigation, Plaintiffs have suffered reputational harm in their local community.

202.    As a result of McClain's use of homophobic slurs against J.S., J.S. has suffered stigma and prejudice, and has been subjected, at a very young age, to needless social pressure and speculation concerning his sexuality.

**THIRD CAUSE OF ACTION**
VIOLATION OF 20 U.S.C. § 1681 *ET SEQ.* (TITLE IX)
(ALL PLAINTIFFS AGAINST TALIHINA PUBLIC SCHOOL DISTRICT)

203.    Plaintiffs hereby incorporate ¶¶ 1–202 above as if fully set forth and restated herein.

204.    TPSD, by and through its agents (including Defendants Lockhart, Anderson, McClain, Blair, and Bryant), retaliated against Plaintiffs by engaging in acts intended to interfere with Plaintiffs' rights under Title IX because Plaintiffs filed a formal complaint of sexual harassment.  Such acts had the foreseeable effect of "chilling" Plaintiffs from ever making such a report again and will further discourage others from making similar reports in the future.

205.    TPSD, in response to Plaintiffs' protected action, engaged in various acts of retaliation.  These acts include, but are not limited to, (a) TPSD's decision to keep McClain in the all-boys fifth grade classroom while removing J.S. from the same pending resolution of Plaintiffs' formal complaint; (b) the dissemination by TPSD officials of facts in the Title IX investigation to those not privy to the same, including the identity of J.S. and his family as the Complainants; (c) hostile statements and accusations from TPSD officials like Anderson and Blair calling J.S. and his family members "liars" or accusing the same of dishonesty; (d) Blair's decision to require that J.S. sit on the floor for the duration of class, as opposed to at a desk; and (e) Blair's violent outburst at the Whitesboro basketball game, wherein he threatened Plaintiffs and attempted to start a fight.

206.    TPSD's retaliation had the dual effect of punishing Plaintiffs for their filing of a Title IX complaint and discouraging Plaintiffs (or others) from making any complaints in the future.

207.    As described hereinabove, *supra* ¶¶ 138–72, Defendant TPSD—by and through the acts of Talihina Elementary agents, officials, and/or administrators, including Defendants Lockhart, Anderson, and Blair—retaliated against Plaintiff J.S., in violation of Title IX, for filing a formal complaint.

208.    TPSD, in retaliating against J.S., did so intentionally, willfully, and in disregard of J.S.'s rights under Title IX and the First Amendment.

35

209. Moreover, with respect to the actions and conduct described herein, McClain, Lockhart, Anderson, and Blair acted as agents or employees of TPSD. Their acts and/or omissions, therefore, may be considered the acts or omissions of TPSD.

210. As a result of TPSD's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

211. As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

212. As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

213. As a result of TPSD's actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

214. As a result of TPSD's actions, including Anderson and Blair's claims that Plaintiffs *lied* in the course of the Title IX investigation, Plaintiffs have suffered reputational harm and a loss of credibility in their local community.

**FOURTH CAUSE OF ACTION**
VIOLATIONS OF 42 U.S.C. § 1983
(J.S. AGAINST TALIHINA PUBLIC SCHOOL DISTRICT; MCCLAIN)

215. Plaintiffs hereby incorporate ¶¶ 1–214 above as if fully set forth and restated herein.

216. Plaintiff J.S. enjoys rights to equal protection, procedural and substantive due process, and to be free from unlawful discrimination, as protected by the Fifth and Fourteenth Amendments to the U.S. Constitution.

36

217. Plaintiff J.S. retains a liberty and property interest in obtaining a fair, free, and public education and in otherwise attending his local public school.

218. By adopting, implementing, and enforcing a policy of segregation based on sex in Talihina Elementary's fifth-grade program, TPSD deprived J.S. of rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments, including J.S.'s clearly established rights to procedural and substantive due process, equal protection, and to be free from sex and gender discrimination at school.

219. By and through the actions of Defendant McClain, TPSD deprived J.S. of rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments, including J.S.'s clearly established rights to procedural and substantive due process, equal protection, and to be free from sex and gender discrimination at school.

220. By and through its deliberate indifference and retaliation in response to Plaintiffs' formal complaint under Title IX, TPSD deprived J.S. of rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments, including J.S.'s clearly established rights to substantive and procedural due process, equal protection, and to be free from sex and gender discrimination at school.

221. At all times pertinent to the allegations raised herein, Defendants Lockhart, Anderson, McClain, McLemore, Blair, and Bryant were acting as agents of Defendant TPSD.

222. McClain's sexual harassment of J.S. sex or gender-oriented in nature and directed at J.S. because of his sex, gender, sexuality, and/or gender performance or McClain's assumptions about the same.

223.    McClain's sexual harassment of J.S. was sufficiently severe and pervasive to create a hostile learning environment for J.S. and otherwise deprive J.S. of fair and equitable access to a public education.

224.    As a result of TPSD's and McClain's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

225.    As a result of TPSD's and McClain's actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

226.    As a result of TPSD's and McClain's actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

227.    As a result of TPSD's and McClain's actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

228.    As a result of TPSD's and McClain's actions, Plaintiffs have suffered reputational harm and stigma in their local community.

**FIFTH CAUSE OF ACTION**
VIOLATIONS OF 42 U.S.C. § 1983
(J.S. AGAINST RUSSELL; WOODS; CRANK; BLUE; MORELAND; LOCKHART; *AND* ANDERSON)

229.    Plaintiffs hereby incorporate ¶¶ 1–228 above as if fully set forth and restated herein.

230.    By adopting, implementing, and enforcing a policy of segregation based on sex in Talihina Elementary's fifth grade program, Defendant Board Members (Russell, Woods, Crank, Blue, Moreland, and Lockhart) and Defendant Anderson deprived J.S. of rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments, including J.S.'s clearly established

rights to procedural and substantive due process, equal protection, and to be free from sex and gender discrimination at school.

231. Until receiving an order from OSDE to correct its violations of federal law by integrating its classrooms, Defendants knowingly, intentionally, and/or recklessly violated both state and federal law and failed to provide to J.S. an option for an equitable, sex-integrated learning environment.

232. Even after receiving an order from OSDE to correct its violations of federal law, Defendants failed to fully integrate, at least during the remainder of the 2022–2023 Academic Year, and continued—in spirit and effect—to continue its offending conduct.

233. At all pertinent times, Defendants acted in complete disregard of Plaintiff J.S.'s rights.

234. As a result of Defendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

235. As a result of Defendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

236. As a result of Defendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

237.    As a result of Defendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

238.    As a result of Defendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. suffered reputational harm and stigma.

**SIXTH CAUSE OF ACTION**
RETALIATION IN VIOLATION OF 42 U.S.C. § 1983
(ALL PLAINTIFFS AGAINST ANDERSON; BLAIR; BRYANT)

239.    Plaintiffs hereby incorporate ¶¶ 1–238 above as if fully set forth and restated herein.

240.    As described hereinabove, *supra* ¶¶ 138–72, Defendants Anderson and Blair retaliated against Plaintiff J.S., in violation of the First and Fourteenth Amendments, for filing a formal complaint under Title IX and thereafter criticizing TPSD for its handling of the same.

241.    Defendants Anderson and Blair undertook certain acts against Plaintiffs with the effect of "chilling" Plaintiffs from reporting additional allegations of sexual harassment, gender discrimination, or abuse against J.S., or from being critical of Talihina Elementary, its officials, or its processes for investigating complaints of harassment.

242.    Anderson, for example, publicly attacked Plaintiffs' credibility and motives in filing a complaint against McClain for sexual harassment by accusing Plaintiffs of fabricating facts, calling J.S. and his family members "liars," and even implying—without any basis—that Plaintiffs had ulterior motives.  Anderson made these statements and accusations to Plaintiffs directly, as well as to others connected with Talihina Elementary, including parents, other administrators, and school faculty.

243.    Anderson also intentionally undermined the independence, equity, and completeness of the Title IX investigation arising from Plaintiffs' formal complaint by

coordinating with other witnesses, such as Defendant Lockhart, about what information or evidence each would or would not provide to the Title IX Officers as part of their investigation. Anderson acted on this coordination by, for example, explicitly refusing to provide details of conversations between her and McClain relating to his conduct in class and J.S.'s allegations.

244.    On more than one occasion and throughout the relevant Title IX investigation, Anderson retaliated against Plaintiffs by raising—seemingly in defense of TPSD and McClain's actions—completely irrelevant allegations of disciplinary issues involving the Stepps' younger children.  Anderson went out of her way to raise these matters and did so, not only with Plaintiffs, but with at least one of her co-defendants.

245.    Blair retaliated against J.S., including by refusing him a desk or an alternative place to sit—during class, during instruction—after and in response to Plaintiffs' complaints of harassment.

246.    By failing to intervene after witnessing Blair deprive J.S. of a desk or alternative place to sit—again, during class, during instruction—Bryant retaliated against J.S.

247.    Blair retaliated against Plaintiffs at the Whitesboro basketball game after receiving a question from Plaintiff Jonathon Stepp about Blair forcing J.S. to sit J.S. on the floor on his first day back to class on or about October 12, 2022.

248.    On that same occasion, Blair—a Title IX Officer and one of the specific persons charged with investigating J.S.'s complaint of sexual harassment under Title IX—publicly screamed, yelled, and lobbed personal attacks at Plaintiffs, called J.S. and his family members "liars," and threatened a physical fight.

249.    Defendants, in taking the adverse actions described above against J.S., did so intentionally, knowingly, recklessly, and in disregard of J.S.'s rights under the First Amendment.

41

250. As a result of Defendants' actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

251. As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

252. As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

253. As a result of Defendants' actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

254. As a result of Defendants' actions, including Anderson and Blair's claims that Plaintiffs *lied* in the course of the Title IX investigation, Plaintiffs have suffered reputational harm and a loss of credibility in their local community.

**SEVENTH CAUSE OF ACTION**
CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983
(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

255. Plaintiffs hereby incorporate ¶¶ 1–254 above as if fully set forth and restated herein.

256. Upon information and belief, Defendants communicated with one another throughout the Title IX process but outside official communication channels and in messages not disclosed during the Title IX investigation. In these communications, Defendants discussed the facts of the case, how to respond (individually and collectively), and how to rid themselves of Plaintiffs' formal complaint.

257. Illustrating as much, Defendant Anderson, on at least one occasion, told Defendant McLemore not only that she would *not* be disclosing information relevant to the Title IX

investigation to McLemore, but that she was refusing to do so *because of* a conversation she had already had with another Defendant (Lockhart).

258. Defendants, acting in concert, deprived Plaintiff J.S. of his constitutional rights under the Fifth and Fourteenth Amendments, as well as his statutory rights under Title IX, and the Equal Education Opportunities Act.

259. Upon information and belief, Defendants entered into an agreement intended to deprive Plaintiffs of their constitutional rights and of statutory rights intended to secure the same (*e.g.*, under Title IX).

260. Upon information and belief, Defendants entered into an agreement intended to violate J.S's Fifth and Fourteenth Amendment rights to equal protection, procedural and substantive due process, and to be free from discrimination based on sex—*e.g.*, by subjecting J.S. to sex segregation and resulting sexual harassment.

261. Upon information and belief, Defendants entered into an agreement intended to violate Plaintiffs' First Amendment rights by retaliating against Plaintiffs upon their exercise of such rights (*e.g.*, of speech, to petition).

262. Defendants actually deprived Plaintiffs of their constitutional rights under the First, Fifth, and Fourteenth Amendments, as described herein. *Supra.* ¶¶ 215–54.

263. As a result of Defendants' actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

264. As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

265.    As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

266.    As a result of Defendants' actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

267.    As a result of Defendants' actions, Plaintiffs have suffered reputational harm, stigma, and a loss of credibility in their local community.

**EIGHTH CAUSE OF ACTION**
VIOLATION OF 20 U.S.C. § 1701 *ET. SEQ.* (EQUAL EDUCATION OPPORTUNITIES ACT)
(PLAINTIFF J.S. AGAINST TALIHINA PUBLIC SCHOOL DISTRICT; RUSSELL; WOODS; CRANK; BLUE; MORELAND; *AND* LOCKHART)

268.    Plaintiffs hereby incorporate ¶¶ 1–267 above as if fully set forth and restated herein.

269.    Section 1703 of the Equal Educational Opportunities Act requires that "[no] State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin[.]"

270.    By deliberately segregating students at Talihina Elementary into two separate fifth grade classes based on sex, TPSD and the Defendant Board Members denied J.S. equal educational opportunity "on account of his . . . sex."

271.    By effectively forcing J.S. to permanently leave Talihina Elementary—and leaving J.S. with no other reasonably available public school option in his community—Defendants denied J.S. equal education opportunity "on account of his . . . sex."

272.    Defendants, by segregating the fifth-grade classes at Talihina Elementary, violated J.S.'s rights under the Equal Educational Opportunities Act.

273.    As a result of Defendants' actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

274.    As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

275.    As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

276.    As a result of Defendants' actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

277.    As a result of Defendants' actions, Plaintiffs have suffered reputational harm and stigma.

### NINETH CAUSE OF ACTION
RETALIATION IN VIOLATION OF 42 U.S.C. § 1983
(ALL PLAINTIFFS AGAINST TALIHINA PUBLIC SCHOOL DISTRICT; RUSSELL; WOODS; CRANK; BLUE; MORELAND; *AND* LOCKHART)

278.    Plaintiffs hereby incorporate ¶¶ 1–277 above as if fully set forth and restated herein.

279.    As described herein, *supra* ¶¶ 138–72, Defendant TPSD—by and through the acts of Talihina Elementary officials and administrators, including Defendants Lockhart, Anderson, and Blair—retaliated against Plaintiffs in violation of the First Amendment.

280.    By filing a formal complaint under Title IX alleging sexual harassment violative of J.S.'s rights, Plaintiffs were engaged in protected activity.

281.    By participating in the Title IX grievance process provided for by Talihina Elementary, including by making statements to Title IX officials or providing evidence as part of the Title IX investigation, Plaintiffs were engaged in protected activity.

282.   By speaking at a public school board meeting on September 6, 2022, about their concerns of bullying and harassment at Talihina Elementary and the related policy of sex segregation in place at such school, Plaintiffs Jonathon and Amber Stepp were engaged in protected activity.

283.   TPSD's and Defendant Board Members' conduct in response to Plaintiffs' pursuit of a Title IX complaint and other speech would chill a person of ordinary firmness—whether such person be a minor child (like J.S.) or an adult (like Jonathon and Amber)—from ever again filing a grievance of any kind with or concerning Talihina Elementary, its officials, or its employees.

284.   TPSD's and Defendant Board Members' conduct, and the conduct of its officials, was motivated by Plaintiffs' exercise of constitutionally protected conduct—that is, by Plaintiffs' filing of a formal complaint under Title IX; Plaintiffs' speech and objections in opposition to Talihina Elementary's policy of separating the fifth grade boys and girls based on sex; and Plaintiffs' speech and objections to Talihina Elementary's deliberate indifference to the sexual harassment allegations raised by J.S.

285.   TPSD and Defendant Board Members, in retaliating against J.S., did so intentionally, willfully, and in disregard of J.S.'s rights under Title IX and the First Amendment.

286.   As a result of Defendants' actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

287.   As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

288.    As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

289.    As a result of Defendants' actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

290.    As a result of Defendants' actions, including Anderson and Blair's claims that Plaintiffs *lied* in the course of the Title IX investigation, Plaintiffs have suffered reputational harm and a loss of credibility in their local community.

**TENTH CAUSE OF ACTION**
NEGLIGENCE & NEGLIGENT SUPERVISION
(J.S. AGAINST TALIHINA PUBLIC SCHOOL DISTRICT; RUSSELL; WOODS;
CRANK; BLUE; MORELAND; *AND* LOCKHART)

291.    Plaintiffs hereby incorporate ¶¶ 1–290 above as if fully set forth and restated herein.

292.    TPSD and Defendant Board Members owed J.S. a basic duty to exercise reasonable care in controlling the conduct of its agents and employees so as to prevent harm to J.S. and to otherwise protect J.S. from known or reasonably knowable threats of harm.

293.    TPSD and Defendant Board Members breached this duty by:

(i)  failing to reasonably train, supervise, and discipline McClain;

(ii) failing to foster an environment, policy, and culture wherein reports of bullying, harassment, and/or unwanted and sex-oriented activity are encouraged;

(iii) failing to institute *any* policies or procedures compliant with Title IX, including any policies concerning the identification and reporting of sexual harassment by employees, or the handling of formal complaints filed by students or faculty;

(iv) failing to implement or enforce any general policy concerning bullying; and

(v)  failing to comply with HB 1775 and the regulations promulgated thereunder (*see* ¶¶ 323–39 *infra*).

47

294.    TPSD and Defendant Board Members, at all times, knew of the need to exercise control over its employees, including Defendants Lockhart, Anderson, McClain, McLemore, Blair, and Bryant; had the ability to exercise such control; and knew of the need to do so.

295.    By breaching its duties to J.S., TPSD proximately and actually caused injuries to J.S.

296.    TPSD's actions and/or failures to act exposed J.S. to an enhanced risk of harassment and abuse known or obvious to TPSD and other Defendants herein, and those risks were realized.

297.    As a result of TPSD's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

298.    As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

299.    As a result of TPSD's actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

300.    As a result of TPSD's actions, J.S. has suffered mental anguish, emotional distress, and feelings of isolation, shame, and embarrassment.

301.    As a result of TPSD's actions, Plaintiffs have suffered reputational harm and stigma in their local community.

**ELEVENTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(J.S. AGAINST MCCLAIN)

302.    Plaintiffs hereby incorporate ¶¶ 1–301 above as if fully set forth and restated herein.

303.    Defendant McClain violently yelled at J.S. in front of his classmates, singling him out for unnecessary correction and in a manner that scared not only J.S., but his classmates. McClain has even stated that he reached a level of frustration/anger likely "not experienced by" J.S. or his classmates at Talihina Elementary.

304.    McClain harassed and bullied J.S. by, amongst other things, using derogatory language and slurs directed at J.S. during his instruction/during class, in front of J.S.'s classmates.

305.    McClain treated J.S. differently than other boys in his class, *e.g.*, by refusing to let J.S. go to the office to call his parents when ill, but at the same time, allowing another of J.S.'s classmates to go get a drink of water, go to the office, and go to the nurse's office.

306.    Defendant McClain, while instructing his all-boys fifth grade class, called J.S. a "queer" and thereby attributed to him not only a particular sexual identity but also displayed an overt and intentionally negative attitude towards such identity.  J.S., even today, has never identified or expressed any particular sexual orientation in any public manner.

307.    McClain's actions, as described herein, were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

308.    McClain, by his conduct, intentionally or recklessly caused severe emotional distress to J.S. beyond that which any reasonable eleven (11) year old fifth grader could be expected to endure.

309.    As a result of McClain's actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

310.    As a result of McClain's actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

311.    As a result of McClain's actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

312.    J.S., as a result of McClain's actions, suffered mental and emotional distress, mental pain and suffering, anguish, humiliation, embarrassment, anger, and worry, amongst other things.

### TWELFTH CAUSE OF ACTION
DEFAMATION
(ALL PLAINTIFFS AGAINST TALIHINA PUBLIC SCHOOL DISTRICT, ANDERSON, *AND* BLAIR)

313.    Plaintiffs hereby incorporate ¶¶ 1–312 above as if fully set forth and restated herein.

314.    Defendant Anderson publicly and in her capacity as a TPSD school principal called all of the Plaintiffs—but namely, J.S. and Jonathon Stepp—"liars" and specifically labeled true statements made by Plaintiffs during the course of the Title IX investigation as "lies."

315.    Upon information and belief, Anderson relayed that Plaintiffs were "liars" or that their statements were "lies" to individuals not involved in the Title IX investigation (*e.g.*, parents of other fifth graders), as well as to people who were involved.

316.    Defendant Blair called Plaintiffs "liars" at the public Whitesboro basketball game, in response to a specific question from Jonathon Stepp concerning retaliation against J.S.

317.    Anderson and Blair's statements exposed Plaintiffs to public hatred, contempt, ridicule, and disgrace.

318.    Anderson and Blair communicated their statements to persons other than Plaintiffs.

319.    Other persons reasonably understood Anderson and Blair's respective statements to be about Plaintiffs.

320.   Anderson and Blair's statements are and were false.

321.   Anderson and Blair did not exercise reasonable care under the circumstances to determine, before speaking, whether their statements were true or false.

322.   These statements caused Plaintiffs mental and emotional distress, pain, embarrassment, confusion, and humiliation; stigma and prejudice; and other reputational and social harm.

**THIRTEENTH CAUSE OF ACTION**
VIOLATIONS OF 70 O.S. § 24-157
(ALL PLAINTIFFS AGAINST TALIHINA PUBLIC SCHOOL DISTRICT;
LOCKHART; ANDERSON; MCCLAIN; AND BLAIR)

323.   Plaintiffs hereby incorporate ¶¶ 1–322 above as if fully set forth and restated herein.

324.   Section 24-157 of Title 70 of the Oklahoma Statutes—commonly known as HB 1775—prohibits certain topics and classroom methods in Oklahoma public school curricula. After being signed by the Governor, HB 1775 went into effect on July 1, 2021.

325.   The statute, more specifically, forbids any "teacher, administrator, or other employee of a school district" from requiring or making part of any course certain concepts, including the following:

> *(i)* that "one race or sex is inherently superior to another race or sex,"
>
> *(ii)* that "an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex," [5]
>
> *(iii)* that "an individual's moral character is necessarily determined by his or her race or sex," and

---

[5] This subpart (c) has been enjoined by the United States District Court for the Western District as unconstitutionally vague. *See Black Emergency Resp. Team v. Drummond*, No. CIV-21-2033-G, 2024 WL 3015359 (June 14, 2024). That order is currently on appeal and pending with the Tenth Circuit. Thus, Plaintiffs have pleaded this subpart out of an abundance of caution and to avoid any waiver in the event that the injunction is modified on appeal. But they do not currently seek to proceed on any claims specifically arising out of that subpart and stand, instead, on subparts (a), (e), and (g), which the District Court expressly refused to enjoin as applied to K-12 educators. *See id.* at *7–9, 11.

> *(iv)* that "an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his or her race or sex."

70 O.S. §§ 24-157(B)(1)(a), (c), (e), (g).

326.    Effective September 11, 2022, while Defendants' complained-of conduct was still ongoing, the Oklahoma State Board of Education ("OSBE") issued a set of rules implementing the provisions of § 24-157. *See* OAC 210:10-1-23 *et seq.*

327.    The purpose of these rules, in part, is to "prohibit discrimination on the basis of race or sex in the form of bias, stereotyping, scapegoating, classification, or the categorical assignment of traits, morals, values, or characteristics based solely on race or sex." OAC 210:10-1-23(a).

328.    Pursuant to these rules, "[n]o teacher, administrator, or other school employee shall require **or make part of** any Course offered in a Public School" certain "discriminatory principles," including:

> *(i)* that "one race or sex is inherently superior to another race or sex,"
>
> *(ii)* that "an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex,"
>
> *(iii)* that "an individual's moral character is necessarily determined by his or her race or sex," *and*
>
> *(iv)* that "an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his or her race or sex."

OAC 210:10-1-23(c)(1), (3), (5), (7).

329.    The OSBE's rules also state that "Public Schools in this state shall be prohibited from adopting policies, including grading or admissions policies, or providing any other benefit or service that applies to students or any school employee differently on the basis of race or sex, unless specifically permitted by Title IX. **This prohibition includes segregated classes**,

programs, training sessions, extracurricular activities, or affinity groups unless otherwise permitted by Title IX." (internal citations omitted) (emphasis added). OAC 210:10-1-23(d)(8).

330. The OSBE's rules, pertinently, also forbid retaliation against students or parents for "exercising any right or privilege secured by a law referenced in this rule." Title IX is explicitly referenced in the relevant rule. *See* OAC:210:10-1-23(d)(8).

331. As described hereinabove, and following the enactment of these regulations, Defendant TPSD, as well its "Teachers" and "administrators," including Defendants Lockhart, Anderson, McClain, and Blair, violated the letter and spirit of § 24-157 and the relevant rules promulgated thereunder, *see* OAC 210:10-1-23 *et seq.*

332. Defendant TPSD, a "Public School" as defined by the relevant OSBE rules, adopted, implemented, and maintained a policy of segregation applicable to the fifth grade class at Talihina Elementary and such policy obviously applied to students "differently on the basis of race or sex."

333. In fact, despite the HB 1775 taking effect in 2021, and despite the above-reference regulations taking effect September 11, 2022, Defendant TPSD, along with Defendants Lockhart and Anderson, did not de-segregate their classrooms until October 2022 and only after OSDE ordered them to do so on September 29, 2022. J.S. was not returned to an integrated classroom environment until October 12, 2022.

334. Defendants Lockhart, Anderson, and McClain—at all times pertinent hereto, "teacher[s], administrator[s], or other school employee[s]" of TPSD—required or made part of their teaching or coursework discriminatory principles prohibited by 70 O.S. §§ 24-157(B)(1)(a), (c), (e), (g), and the rules promulgated pursuant to that statute.

335. Defendants TPSD, Lockhart, Anderson, McClain, and Blair each retaliated against Plaintiffs for "exercising any right or privilege secured by a law referenced" in the relevant OSBE rules—that is, for exercising their rights to report discrimination and harassment under Title IX—not only by removing J.S. from his classroom and his school sports team but also by retaliating against him after his return to the classroom in October 2022, as more fully described above.

336. As a result of Defendants' actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from TPSD and remove him from Talihina Elementary—the only public elementary school in their town.

337. As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of the free public education to which J.S. is entitled.

338. As a result of Defendants' actions, J.S. and Plaintiffs have lost the benefits of support services for J.S., as mandated by his IEP(s) and as freely available to other public school students who have similar educational and support needs.

339. J.S., as a result of Defendants' actions, suffered mental and emotional distress, mental pain and suffering, anguish, humiliation, embarrassment, anger, chagrin, and worry, amongst other things.

**FOURTEENTH CAUSE OF ACTION**
ASSAULT
(AMBER STEPP *AND* JONATHON STEPP AGAINST BLAIR)

340. Plaintiffs hereby incorporate ¶¶ 1–339 above as if fully set forth and restated herein.

341. At the Whitesboro basketball game, a TPSD event, Plaintiff Jonathan Stepp approached Defendant Blair, a TPSD employee and Title IX Officer, to ask questions about J.S. at school, Blair's conduct toward J.S., and the Title IX investigation.

342.    Defendant Blair, a TPSD employee at a TPSD event being asked questions by a parent in his capacity as an educator and Title IX Officer, physically rushed toward Plaintiffs, got in their faces, and threatened them with an immediate physical fight (*i.e.*, to "come outside" or "take it outside") at the Whitesboro basketball game, with the intention of putting Plaintiffs in apprehension of immediate physical contact or harm.

343.    Defendant Blair recruited others to join his actions, with his own family members participating in yelling, threatening, and screaming at Plaintiffs, creating a chaotic scene.

344.    The genesis and subject of Blair's assaulting remarks were the Stepp family's Title IX and sex-segregation issues and their choice to exercise their rights in relation to these issues. In addition, Blair was one of the Title IX Officers directly involved in the J.S. investigation and his comments during the assault therefore related to his function as a TPSD Title IX Officer and were incidental to his duties as a TPSD employee and Title IX Officer.

345.    Blair's actions caused Plaintiffs to suffer fear, intimidation, and terror.

346.    As Jonathon shielded the eyes of one of his young kids, he and his family generally remained still in fear, intimidation, and terror.

347.    Blair's actions caused Plaintiffs to believe they would be subjected to immediate contact or harm.

348.    Blair, because of his conduct, was removed or escorted out of the Whitesboro basketball game.  Because Plaintiffs reasonably feared Blair and his family could have remained outside the Whitesboro gym until the conclusion of the relevant basketball game (presumably to fight Plaintiffs), Plaintiffs left this school event through a back door.

## FIFTEENTH CAUSE OF ACTION
### CIVIL CONSPIRACY
(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

349.    Plaintiffs hereby incorporate ¶¶ 1–348 above as if fully set forth and restated herein.

350.    As stated more fully above, Anderson and Lockhart had a meeting in which they discussed what evidence they would and would not provide to Title IX investigators, *see* ¶¶ 111–13 *supra*, and Anderson also met with Russell to discuss Plaintiffs' Title IX allegations, *see* ¶ 109 *supra*.

351.    Following these known conversations among Anderson, Lockhart, and Russell, Defendants withheld pertinent information and documents from investigators and began refusing to cooperate with the investigation—so much so that the original Title IX investigator, Ms. McLemore, resigned her position.

352.    Following these known conversations among Anderson, Lockhart, and Russell, all Board Members concerted declination to act on public complaints about McClain's conduct and TPSD's response, *see* ¶¶ 115–18 *supra*.

353.    In addition, Defendants Bryant and Blair continued these coordinated actions by withholding evidence from Plaintiffs and refusing to investigate sources unfavorable to TPSD in the Title IX investigation. *See* ¶¶ 118–29 *supra*.

354.    Defendants, acting in concert, violated Plaintiffs' rights under Oklahoma law, including by violating Plaintiffs' rights to be free from sex discrimination under 70 O.S. § 24-157, and by breaching their general duty of care.

355.    Defendants, acting in concert, retaliated against Plaintiffs in violation of both federal and state law.

56

356.    Defendants TPSD, Russell, Woods, Crank, Blue, Moreland, Lockhart, and Anderson conspired and agreed to segregate Talihina Elementary's fifth grade class based on sex, in violation of federal and state law.

357.    Defendants Lockhart, Anderson, and potentially Russell and others conspired and agreed *not* to cooperate or to interfere with the Title IX investigation undertaken by Talihina Elementary officials.

358.    As a result of Defendants' concerted actions, Plaintiffs Amber and Jonathon Stepp were left with no choice but to withdraw J.S. from Talihina Elementary altogether.

359.    Plaintiffs, as a result of Defendants' concerted actions, suffered mental and emotional distress, mental pain and suffering, anguish, humiliation, embarrassment, anger, and worry, amongst other things.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus an award of attorney's fees and costs and any recoverable *pre-* and *post-*judgment interest, punitive damages, and any other appropriate relief as justice and/or equity so require.

Respectfully Submitted,

s/*Kelsey Frobisher Schremmer*
J. Blake Johnson, OBA No. 32433
Kelsey Frobisher Schremmer, OBA No. 35841
Overman Legal Group, PLLC
809 NW 36th Street
Oklahoma City, Oklahoma 73118
Telephone:    (405) 605-6718
Facsimile:    (405) 605-6719
Email: blakejohnson@overmanlegal.com
        kelseyschremmer@overmanlegal.com

*- and -*

57

Ryan D. Kiesel, OBA No. 21254
Ryan Kiesel, Attorney At Law, PLLC
3022 NW 39th Street, Suite 57532
Oklahoma City, OK 73157
Telephone:    (405) 303-1215
Email: ryan@rkoklaw.com

*- and -*

Wyatt McGuire, OBA No. 34720
McGuire Law Firm
200 E. 10th Street Plaza
Edmond, Oklahoma 73034
Telephone:    (405) 513-5658
Email: wyatt@kentmcguirelaw.com
**Attorneys for Plaintiffs**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**


## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Adam S. Breipohl, Esq.
Frederick J. Hegenbart, Esq.
Whitney M. Eschenheimer, Esq.


s/*Kelsey Frobisher Schremmer*
For the Firm

58