# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

AMBER STEPP and JONATHON STEPP,　　　)
individually and as parents and next friends　)
of J.S., a minor child,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Plaintiffs,　　)
　　　　　　　　　　　　　　　　　　　)　　Case No. 6:24-cv-146-JAR
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
TALIHINA PUBLIC SCHOOL DISTRICT, *et al.*,　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Defendants.　)

## OPINION AND ORDER

Plaintiffs Amber and Jonathon Stepp (collectively, the "Stepps"), individually and as parents and next friends of J.S., a minor child, filed a complaint on April 23, 2024, which they amended on May 30, 2024, and again on December 5, 2024. The second amended complaint ("SAC") [Doc. 93][1] asserts fifteen claims against eleven defendants for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, the First, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"), the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 *et seq.*, and Oklahoma law.

Before the court is the motion to dismiss ("Motion") [Doc. 101] filed on behalf of defendant Kevin McClain ("McClain") in his individual capacity as a teacher employed by defendant Independent School District No. 52 of LeFlore County, Oklahoma, commonly known as Talihina Public School District ("TPSD"). McClain

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and documents numbers provided by CM/ECF.

seeks dismissal of all five claims asserted against him in the SAC pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a), the doctrine of qualified immunity, and the Oklahoma Governmental Tort Claims Act, *Okla. Stat*. tit. ("O.S.") 51, § 151 *et seq*. Plaintiffs filed a response opposing the Motion [Doc. 106], and McClain timely replied [Doc. 109].[2]

## I.     BACKGROUND

### A.     PLAINTIFFS' ALLEGATIONS

At the time of the events in question, J.S. was an eleven-year-old student enrolled in the fifth grade at Talihina Elementary. [Doc. 93, ¶ 31].[3]  Beginning in August 2022 and at the direction of TPSD's superintendent, defendant Jason Lockhart ("Supt. Lockhart" or "Lockhart"), and the Talihina Elementary principal, defendant Kathy Anderson ("Principal Anderson" or "Anderson"), fifth-grade students were segregated into two classes solely on the basis of gender. [*Id*. ¶ 21]. The all-boys class was taught by McClain, and the all-girls class was taught by a female teacher. TPSD's policy left fifth-grade students at Talihina Elementary, including J.S., with no option but to attend gender-segregated classes. [*Id*. ¶¶ 22, 30, 33].

During the first week of the 2022-2023 school year—the week of August 16—McClain frequently yelled at J.S. and his classmates. During the second week of school—the week of August 22—McClain began targeting J.S. in several ways, including berating J.S. until he was reduced to tears and prohibiting J.S. from leaving

---

[2] Though generally disfavored, the court acknowledges plaintiffs' incorporation by reference of their response brief [Doc. 105] opposing the TPSD defendants' separate motion to dismiss the SAC.
[3] TPSD is a political subdivision and body corporate of the State of Oklahoma, duly created and charged with the operation of Talihina Elementary School. [*Id.*, ¶ 2 (*citing* 70 O.S. §§ 1-108, 5-101, 5-103, 5-105)].

the classroom when he reportedly felt unwell, despite allowing another student to leave the classroom three separate times for the same reason. On August 24, a concerned parent of another fifth-grade boy contacted Mrs. Stepp regarding McClain's use of derogatory and harassing language toward J.S. Mr. Stepp met with Supt. Lockhart the following day to report McClain's targeted, disproportionate treatment of J.S. and explicitly raised concerns about his son's safety and wellbeing at school. TPSD responded by placing a "hall monitor" outside McClain's classroom to observe student-teacher interactions. [*Id.* ¶¶ 34-42].

While this hall monitor was purportedly on duty, McClain raised inappropriate topics with his students, including but not limited to: encouraging discussions about kissing girls; instructing his students not to draw male genitals because J.S. was "queer"; and, after witnessing J.S. playfully roughhouse with classmates, instructing his students to yell "f*g alert" upon unwanted contact from classmates. [*Id.* ¶¶ 43-45]. J.S. subsequently informed Mr. Stepp a classmate had advised that the next time McClain called him a "queer," J.S. should respond by calling McClain a different homophobic slur. Shocked by this language, Mr. Stepp soon discovered J.S. had learned these slurs from McClain. Mr. Stepp then defined these slurs for J.S., who immediately began to cry and question why McClain would refer to him using such terms. [*Id.* ¶¶ 50-52].[4] On or around the day that Mr. Stepp learned of McClain's name-calling, Mrs. Stepp separately learned of the same from a concerned grandparent of another fifth-grade boy. [*Id.* ¶ 55].

---

[4] When Mr. Stepp met with Supt. Lockhart on or about August 25, 2022, he was not yet aware of McClain's targeted use of derogatory and sexually harassing language toward J.S. [*Id.* ¶ 49].

During a subsequent phone call with the Stepps, McClain admitted to yelling at his class, using the phrase "f*g alert," and discussing male genitalia with his fifth-grade students in a manner that targeted J.S. [*Id.* ¶¶ 46, 62-63]. McClain further acknowledged that his conduct was generally inappropriate for fifth-grade students, and that he would not have used certain terms or raised certain topics had fifth-grade girls been present. Soon thereafter, the Stepps informed Principal Anderson of their intent to file a formal Title IX complaint against McClain. Upon information and belief, multiple defendants—including Lockhart, McClain, Anderson and Talihina Elementary's then-designated Title IX officer, Rebecca McLemore ("McLemore")— privately discussed the Stepp's concerns regarding McClain's behavior and coordinated a responsive strategy for the imminent Title IX complaint. [*Id.* ¶¶ 64-65].

On or about August 29, 2022, the Stepps met with Supt. Lockhart, McClain, and McLemore to gather pertinent information regarding the Title IX process and TPSD's grievance procedures. Supt. Lockhart prohibited McLemore from speaking during this meeting and the Stepps received little, if any, information on how to file a Title IX complaint. [*Id.* ¶¶ 66-67, 69]. McLemore contacted Mrs. Stepp directly after the meeting, however, to apologize and recommend that the Stepps complete an Alleged Sexual Harassment Form ("Form"). The Stepps submitted a completed Form that same day, and TPSD officials treated said Form as a formal complaint of sexual harassment under Title IX. [*Id.* ¶¶ 71-73]. Apart from the Form, the Stepps did not receive any notice or instruction concerning Talihina Elementary's grievance process or its procedure for resolving formal complaints under Title IX. [*Id.* ¶ 76].

4

On the same day the Stepps submitted their Title IX complaint, TPSD officials removed J.S. from the all-boys class but refused to remove McClain from the same pending resolution of the Title IX investigation. [*Id.* ¶¶ 94-97]. Eventually, Principal Anderson worked with the Stepps to create a modified school schedule wherein J.S. would attend the Language Arts class for one period and would, for the remainder of the school day, be kept alone in the library. [*Id.* ¶ 100]. The Stepps had no choice but to accept Anderson's modified schedule proposal, as they had refused an offer to place J.S. in the all-girls class due to concerns that such a placement would further stigmatize and ostracize their son. [*Id.* ¶¶ 99, 101]. While the Title IX investigation was ongoing, J.S. received little to no general instruction from teachers and received none of the special education support provided for in his Individual Education Plan ("IEP"). [*Id.* ¶¶ 100, 102, 105]. His grades dropped as a result, and TPSD deemed him ineligible to participate in extracurricular activities—including basketball. [*Id.* ¶¶ 103-04]. In or around late-August or early-September of 2022, the Stepps decided J.S. would receive a better education if he were homeschooled and withdrew their son from TPSD. [*Id.* ¶ 336; Doc. 93-3 at 2].

On or about August 30, 2022, McLemore met with Principal Anderson to discuss the investigation into the Stepp's Title IX complaint. During this meeting, Anderson confirmed she would provide McLemore with notes summarizing her communications with Supt. Lockhart and McClain regarding the Stepps' allegations against McClain. [Doc. 93, ¶¶ 107-08]. On September 1, however, Anderson refused to provide McLemore with any requested notes memorializing her admitted

conversations with Lockhart and McClain. According to a Title IX "Contact Sheet" completed by McLemore, Anderson and Lockhart had privately determined Anderson's notes and recollection were irrelevant to the Title IX investigation. [*Id.* ¶¶ 112-13]. McLemore abruptly resigned as Talihina Elementary's Title IX officer the following week, stating: "[I]t is very apparent to me that I am not qualified to fulfill this position. I believe to continue in this role would set me in a place of ethical and professional liability." [*Id.* ¶¶ 118-19].

Unbeknownst to plaintiffs at the time, on September 29, the Oklahoma State Department of Education issued a letter to TPSD and Lockhart advising that Talihina Elementary's policy of segregating fifth-grade classes on the basis of gender violated federal civil rights laws, including Title IX, and directing integration of fifth-grade classes by no later than October 10, 2022. [*Id.* ¶¶ 138-41; Doc. 93-3]. On October 12, 2022, J.S. returned to Talihina Elementary and was placed in an integrated fifth grade class not taught by McClain. [*Id.* ¶¶ 145, 333]. However, the Stepps pulled J.S. and his siblings from Talihina Elementary—the only public school in their immediate vicinity—following the 2022-2023 school year because they felt they could not safely report teacher-on-student sexual harassment or bullying if and/or when such issue arose in the future. To date, J.S. and his four younger siblings remain homeschooled. [*Id.* ¶¶ 167-69].

### B.   SUMMARY OF DISMISSAL PLEADINGS

Plaintiffs bring the following five claims against McClain in their SAC, seeking relief in the form of actual and punitive damages: a § 1983 claim for alleged

constitutional violations (Count Four); a § 1983 claim for civil conspiracy (Count Seven); a state claim for intentional infliction of emotional distress (Count Eleven); a state claim for gender discrimination pursuant to 70 O.S. § 24-157 (Count Thirteen); and a state claim for civil conspiracy (Count Fifteen).

In late-December of 2024, the TPSD defendants and McClain separately filed a motion to dismiss the SAC pursuant to Rule 12(b)(6). McClain argues in his Motion that: (1) the SAC fails to allege McClain violated plaintiffs' constitutional rights; (2) McClain is entitled to qualified immunity on plaintiffs' federal claims; (3) plaintiffs fail to state a claim for intentional infliction of emotional distress because McClain's conduct, as alleged, is not "extreme and outrageous"; (4) there is no private right of action under 70 O.S. § 24-157; and (5) plaintiffs fail to state conspiracy claims against McClain under both state and federal law.[5]

## II.   STANDARD FOR MOTIONS TO DISMISS

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)  "'is appropriate if the complaint alone is legally insufficient to state a claim.'" Serna v. Denver Police Dep't, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting Brokers' Choice of Am., Inc. v. NBC Universal, 861 F.3d 1081, 1104-05 (10th Cir. 2017). When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving part. S.E.C. v. Shields, ("Shields") 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader

---

[5] On March 4, 2025, the court held an in-person hearing and heard oral arguments from all parties on the pending dismissal pleadings. See [Doc. 120].

is entitled to relief." <u>Fed. R. Civ. P. 8(a)(2)</u>. The complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief about the speculative level." <u>Bell Atl. Corp. v. Twombly</u> ("<u>Twombly</u>"), 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Shields</u>, 744 F.3d at 640 (*quoting* <u>Ashcroft v. Iqbal</u> ("<u>Iqbal</u>"), 556 U.S. 662, 678 (2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 678-79.

### III.  CLAIMS FOR VIOLATIONS OF FEDERAL LAW

Plaintiffs' federal claims against McClain are asserted pursuant to § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." <u>Brown v. Buhman</u>, 822 F.3d 1151, 1161 & n.9 (10th Cir. 2016).

### A.  INTRODUCTION

To state a claim under § 1983, a plaintiff must (1) "allege the violation of a right secured by the Constitution and the laws of the United States" and (2) "show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Akins</u>, 487 U.S. 42, 48 (1988). McClain does not dispute that he was acting under the color of state law; thus, the issue is whether plaintiffs have sufficiently alleged they have been deprived of a constitutional right.

### 1.    Distinction Between Individual and Official Capacity Claims

As noted, plaintiffs seek to hold McClain liable under § 1983 in his individual (or personal) capacity *only*. "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham ("Graham"), 473 U.S. 159, 165-66 (1985) (internal citations omitted). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal asserts, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself." Id. at 166.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Id. Thus, to hold McClain liable under § 1983 in his individual capacity, plaintiffs must allege facts to establish his personal involvement in the purported deprivations. *See* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 768 (10th Cir. 2013). More is required to establish official capacity liability, however, "for a [municipality] is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Graham, 473 U.S. at 166 (internal citations omitted). With this distinction in mind, it is clear that plaintiffs' § 1983 claims against McClain in his individual capacity cannot lead to imposition of fee liability upon TPSD. *See* id. at 167. Such a result would be inconsistent with the

well-settled principle that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).

### 2.    Qualified Immunity

McClain is entitled to assert, and has asserted, the defense of qualified immunity as to both § 1983 claims pending against him. *See* <u>Maresca v. Bernalillo Cty.</u>, 804 F.3d 1301, 1307 (10th Cir. 2015) ("An official [sued in their individual capacity] may plead an affirmative defense of qualified immunity."). "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Thomas v. Kaven</u>, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff "must allege facts sufficient to show (assuming they are true) that the [1] defendant plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time" of the defendant's alleged conduct. <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1249 (10th Cir. 2008).[6] The court may assess these two inquiries in any order. *See* <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In making this assessment, the court must construe the SAC in the light most favorable to plaintiffs, accept all well-pleaded allegations as true, and draw all reasonable inferences in plaintiffs' favor. *See* <u>Bella</u>

---

[6] A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). A relevant Supreme Court or Tenth Circuit decision is alone sufficient to establish a right for purposes of qualified immunity. <u>A.N. v. Syling</u>, 928 F.3d 1191, 1197 (10th Cir. 2019).

v. Chamberlain, 24 F.3d 1251, 1254 (10th Cir. 1994). If plaintiffs fail to satisfy either prong, this court must grant qualified immunity to McClain. *See* Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2011).

### B.  COUNT FOUR | § 1983 CLAIMS FOR CONSTITUTIONAL VIOLATIONS

In Count Four of the SAC, plaintiffs bring a broad array of § 1983 claims against two defendants: (1) TPSD, a municipal entity, for adopting and enforcing an unconstitutional policy of sex-based segregation in Talihina Elementary's fifth-grade program; and (2) and McClain, in his individual capacity, for alleged violations of J.S.'s constitutional rights to procedural due process, substantive due process, and equal protection. It appears that, based on the dismissal pleadings, both parties consider the individual capacity claims against McClain in Count Four as separate and unrelated to the municipal liability claim against TPS.

Notwithstanding, Fed. R. Civ. P. 10(b) provides that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Rule 10(b) further provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." As established, Count Four asserts two factually and legally distinct theories of § 1983 liability against a municipal entity and an individual defendant in his personal capacity. *See* Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010) (since "vicarious liability is inapplicable to" § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (*quoting* Iqbal, 556 U.S. at 676).

Combining these separate claims into a single count is inconsistent with Rule 10(b)'s directive to promote clarity through distinct counts for distinct claims. Because the claims in Count Four are legally and factually independent, plaintiffs would have better complied with Rule 10(b) by asserting them in separate counts. Nevertheless, the court declines to dismiss Count Four on that basis alone and instead addresses the sufficiency of the embedded sub-claims against McClain under Rule 12(b)(6).

### 1. Deprivation of Procedural Due Process Rights

The Fourteenth Amendment forbids the state from depriving an individual of life, liberty, or property without due process of law. Coutoure v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243, 1256 (10th Cir. 2008). The Procedural Due Process Clause, however, does not safeguard an infinite number of interests; rather "[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: [1] that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and [2] that he was not afforded an appropriate level of process." Id. (*citing* Bd. of Regents v. Roth, 408 U.S. 564, 570 (1972) (additional citations omitted). "To determine what process is due, courts must balance: (1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation; and (3) the burden on the government from additional procedural requirements." Id. at 1258 (*citing* Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

As to the first element, plaintiffs allege that McClain deprived J.S. of his property interest in a public education and liberty interest in his reputation at

Talihina Elementary. [Doc. 93, ¶¶ 222-28; Doc. 105 at 18]. It is well-settled that "public school students have a protected property interest in public education and a liberty interest in their reputations, and therefore are entitled to certain procedural due process protections within the educational context." Id. at 1256 (*citing* Goss v. Lopez, 419 U.S. 565, 574 (1975)). Turning to the second element, the Supreme Court has held that when a "complete deprivation of education" occurs—such as when a student accused of wrongdoing is removed from school for ten days or less—the student at minimum is entitled to "notice and . . . some kind of hearing," though the "timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved." Goss, 419 U.S. at 578-79. Here, J.S. was not accused of wrongdoing. He accused McClain of wrongdoing and, immediately after the Stepps submitted a Title IX complaint against McClain for sexual harassment, TPSD unilaterally removed J.S. from McClain's classroom for approximately six weeks without notice, without any type of hearing, and without providing alternative options for fair and equitable instruction. [Doc. 93, ¶¶ 94-105].

Notwithstanding, McClain contends that plaintiffs fail to plausibly allege a procedural due process claim *against him* because they have not shown his personal involvement in any purported deprivations of process. [Doc. 101 at 15]. *See* Schneider, 717 F.3d at 768 ("Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation."). Plaintiffs specifically allege that McClain deprived J.S. of his property interest in a free public education by increasingly singling him out for "repeated and excessive discipline." [Doc. 93, ¶¶

36, 225]. As there are no allegations that McClain actually removed J.S. from the classroom, any loss of a property right is de minimis and not subject to procedural protections.[7] Even assuming McClain's "repeated and excessive discipline" was ineffective, or even counterproductive, such discipline cannot be treated as equivalent to denying J.S. the education to which he is legally entitled. As the SAC does not allege facts showing that McClain personally deprived J.S. of constitutionally adequate procedural protections, plaintiffs have failed plausibly state a procedural due process violation. Thus, McClain is entitled to qualified immunity on the § 1983 procedural due process sub-claim asserted against him in Count Four of the SAC.

## 2.    Deprivation of Substantive Due Process Rights

Plaintiffs allege that McClain used his position of authority "to target a child with sexual slurs, instruct classmates to bully him using the same slurs, physically and verbally intimidate him to the point of tears in front of his peers, invite public speculation and criticism of his nascent sexuality, encourage classmates to engage in ostracizing conduct, and obstruct his attempts to contact his parents when, in the midst of this abusive environment, the child began to feel unwell." [Doc. 105 at 19 (*citing* Doc. 93, ¶¶ 34-39, 44-47, 303-06)]. Such arguments require the court "to wade into the murky water of § 1983-based" substantive due process claims. Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008) (citation omitted).

---

[7] *See e.g.*, Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1080-81 (5th Cir. 1995) ("De minimis or trivial deprivations of liberty in the course of the disciplining of a student do no implicate procedural due process requirements."); Fenton v. Steer, 423 F.Supp. 767 (W.D. Pa. 1976) (assignment to a room and a prohibition of participation in school trip were a de minimis interference with rights); Laney v. Farley, 501 F.3d 577, 581-82 (6th Cir. 2017) (a one-day in-school suspension did not infringe on the plaintiff's property or liberty interest; Hassan, *supra*, at 1078-80 (locking student in a holding room when he misbehaved did not require any procedural protections).

The Supreme Court recognizes two types of substantive due process claims: "(1) claims that the government has infringed a 'fundamental' right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." Doe v. Woodard, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal citations omitted). Here, plaintiffs have pled the latter based on McClain's arbitrary and conscious shocking decision to psychologically abuse J.S. for at least ten days. "Conduct that shocks the judicial conscience" is "deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" Seegmiller v. LaVerkin City, 528 F.3d 762, 767 (10th Cir. 2008) (quoting City of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" Perez v. Unified Gov't of Wyandotte Cty., Kan. City, Kan., 432 F.3d 1163, 1168 & n.4 (10th Cir. 2005). McClain argues plaintiffs have not plausibly stated a substantive due process violation because their allegations "do not come close to satisfying the 'shocks the conscience' standard." [Doc. 101 at 12]. Whether specific conduct shocks the conscience is a question of law for the court. Id.

The Tenth Circuit has indeed recognized that psychological abuse alone can violate substantive due process protections, and that "matters relating to marriage, family, procreation, and the right to bodily integrity" are generally considered to implicate substantive due process rights. Abeyta v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1257 (10th Cir. 1996). The SAC seems to indicate the underlying

theory forming the basis of this sub-claim is J.S.'s substantive due process right to a free public education. [Doc. 93, ¶¶ 217, 225]. As pled, the court finds that the SAC sufficiently alleges conduct of the "high level of outrageousness" required by clearly established precedent. *See* id. at 1254-55 (requiring "a brutal and inhumane abuse of official power literally shocking to the conscience . . . with indifference or deliberate intent to cause psychological harm."). As plaintiffs have stated a plausible § 1983 substantive due process sub-claim against McClain in Count Four of the SAC, his connected request for qualified immunity is denied.

### 3.    Deprivation of Equal Protection Rights

Plaintiffs claim that "McClain's sexual harassment of J.S. was sufficiently severe and pervasive to create a hostile learning environment for J.S. and otherwise deprive J.S. of fair and equitable access to a public education." [Doc. 93, ¶ 223]. "Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983." Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999). In the Tenth Circuit, it has been clearly established that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." Id. at 1251. One form of actionable sexual harassment is "hostile environment harassment." Escue v. N. Okla. Coll., 450 F.3d 1146, 1157 (10th Cir. 2006) (quotation omitted). To prevail on such a claim, plaintiffs must show that McClain's "conduct was sufficiently severe or pervasive as to interfere unreasonably with [J.S.'s] school performance and create a hostile or abusive educational environment." Id. The severe and pervasive inquiry "should be

judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (quotation omitted). Accordingly, the analysis "depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." Id. at 82. Two such considerations are "the ages of the harasser and the victim." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 651 (1999).

McClain contends the SAC is insufficient to establish an equal protection violation because plaintiffs allege only five explicitly gender-based comments that were directed toward J.S. [Doc. 109 at 7-8]. This argument rests on two mistaken premises. First, "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile . . . environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). "This is because what is important in a hostile environment claim is the environment, and gender-neutral harassment makes up an important part of the relevant . . . environment." Chavez v. New Mexico, 397 F.3d 826, 833 (10th Cir. 2005). Second, McClain's argument fails to recognize that sexually charged comments, even if not directly about gender, qualified as gender-related under Tenth Circuit precedent.[8] Although federal courts do no not

---

[8] See O'Shea, 185 F.3d at 1099 (comments in which co-worker "compared his wife to a Playboy magazine and described a dream about a naked woman jumping on a trampoline" are related to "gender or sexual animus"); Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998) (comments comparing the shape of a roof to breasts and a trip to a Hooters restaurant "have gender-related implications").

impose "a general civility code," Oncale, 523 U.S. at 80, we do include comments and actions that are inherently sexual in nature under the rubric of "gender-related." Though McClain argues he directed only five gender-based comments toward J.S., the SAC contains much more. Plaintiffs allege that, within the first ten days of the 2022-2023 school year, McClain "made J.S. cry in class twice, started at least two inappropriately sexual conversations (about kissing and about male genitalia), called J.S. two different slurs, affirmatively encouraged J.S.'s classmates to engage in sex-based harassment of J.S., and screamed at J.S.'s class so many times and so violently that J.S. 'repeatedly' reported the behavior to his parents and at least two concerned parents of other children called [the Stepps] to report [McClain's] behavior." [Doc. 106 at 3 (*citing* Doc. 93, ¶¶ 34-45, 55-59, 94)].

These allegations plausibly suggest a pervasively hostile environment and thus suffice at the motion to dismiss stage. *See* Iqbal, 556 U.S. at 678; Escue, 450 at 1157. As noted, in assessing the requisite degree of severity or pervasiveness to support a hostile environment claim, the court must be mindful of "surrounding circumstances, expectations, and relationships," Oncale, 523 U.S. at 81, including the "ages of the harasser and the victim," Davis, 526 U.S. at 651. McClain's role as an elementary school teacher obviously requires greater sensitivity toward students than would be required as between coworkers. *See* Oncale, *supra*, at 82 ("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find

severely hostile or abusive."). The court concludes that plaintiffs have plausibly stated a § 1983 equal protection sub-claim against McClain in Count Four of the SAC. As a result, McClain's connected request for qualified immunity is denied.

### C.    COUNT SEVEN | § 1983 CONSPIRACY CLAIM

McClain contends plaintiffs' failure to allege any constitutional deprivation resulting from his personal conduct precludes their § 1983 conspiracy claim against him. [Doc. 101 at 28]. At the motion to dismiss stage, a plaintiff need only allege facts demonstrating "an agreement and concerted action amongst the defendants." Tomkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1988). Recognizing that "direct evidence of an agreement to join a conspiracy is rare," the Tenth Circuit has held that "assent can be inferred from acts furthering the conspiracy's purpose." Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022).

The SAC alleges a conspiracy involving all individual defendants, including McClain, where they agreed to take unlawful actions to protect TPSD and McClain against plaintiffs' allegations of discrimination and harassment, and to deprive plaintiffs of a fair, unbiased investigation into said allegations [Doc. 93, ¶¶ 65, 75, 81, 96-98, 106-108, 111-113, 115-117, 124, 147-152]. Accordingly, the court finds that plaintiffs have alleged sufficient agreement to support their § 1983 conspiracy claim against McClain. The question remains, however, of whether plaintiffs have sufficiently alleged McClain's personal involvement in the constitutional deprivations arising from this purported agreement.

### 1.   Deprivation of Procedural Due Process Rights

As established, plaintiffs have alleged facts sufficient to establish that McClain deprived J.S. of his property interest in a public education and liberty interest in his reputation at Talihina Elementary. [*Id.* ¶¶ 256, 259-67]. As for the second requisite element of a § 1983 procedural due process claim, plaintiffs allege that McClain entered into an agreement with individual TPSD defendants to interfere with the Title IX investigation and deprive plaintiffs of their rights under the Title IX process. [*Id.* ¶¶ 94-102, 256-262]. Nothing in the SAC links McClain to the purported mishandling of the Title IX investigation, however. *See* <u>Robbins</u>, 519 F.3d at 1250. Plaintiffs allege that McClain was the subject of the Title IX investigation, rather than an investigator or a school official with authority to act on the investigation's results. [*Id.* ¶¶ 69, 121, 128-33]. Plaintiffs do not allege that McClain possessed, let alone exercised, any level of control over the manner in which TPSD resolved the Stepps' Title IX complaint. In fact, the SAC alleges that TPSD failed to include plaintiffs *and* McClain in any notice of the complete allegations raised during the Title IX process. [*Id.* ¶ 81]. As there are no factual allegations in Count Seven indicating that McClain deprived J.S. of constitutionally adequate procedural protections, plaintiffs have failed to allege facts showing McClain violated their procedural due process rights.

### 2.   Deprivation of Substantive Due Process Rights

As noted, Count Seven asserts a conspiracy between McClain and individual TPSD defendants to violate plaintiffs' constitutional rights through a sham Title IX

investigation. [*Id.* ¶¶ 256-57]. The only factual allegation supporting McClain's personal involvement is his sexual harassment of J.S. from August 16 to August 29, 2022—*i.e.*, prior to the alleged conspiracy to conduct a constitutionally deficient Title IX investigation. [*Id.* ¶¶ 34, 94, 260]. The allegations in Count Seven do not support a claim that McClain conspired with others *after the fact* to violate J.S.'s substantive due process rights. Alleging prior misconduct is not sufficient to show involvement in a later conspiracy absent factual content tying McClain to that later conduct. The court accordingly finds that plaintiffs have failed to allege facts in Count Seven showing McClain violated their substantive due process rights.

### 3.    Deprivation of Equal Protection Rights

In the same vein, the only factual allegation supporting McClain's personal involvement in the purported violation of plaintiffs' equal protection rights is his sexual harassment of J.S. [*Id.* ¶¶ 34, 94, 260]. For the reasons set forth in the previous section, the court finds plaintiffs have failed to allege facts showing McClain violated their equal protection rights. Because the SAC is bereft of factual allegations that could plausibly indicate McClain's personal involvement in any constitutional violations underlying the § 1983 conspiracy claim, McClain is entitled to qualified immunity and his request for Rule 12(b)(6) dismissal of Count Seven is granted.

### IV.   CLAIMS FOR VIOLATIONS OF STATE LAW

Plaintiffs assert three claims under Oklahoma law against McClain, alleging intentional infliction of emotional distress ("IIED") (Count Eleven), violation of 70 O.S. § 24-157's prohibition against gender discrimination in public education (Count

Thirteen), and civil conspiracy (Count Fifteen). McClain contends the latter two claims should be dismissed because, as alleged in the SAC, any actions by him were performed in the scope of his employment. Under the Oklahoma Governmental Tort Claims Act (GTCA), only a governmental entity or political subdivision can be liable for a tort committed by an employee while acting within the scope of employment. The GTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." 51 O.S. § 163(C); [9] *see also* id. § 152(12) (defining "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment of tasks lawfully assigned by a competent authority."). Thus, individual government employees are immunized from tort liability for actions taken within the scope of employment. *See e.g.*, Tuffy's, Inc. v. City of Okla. City, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163.

## A.    COUNT ELEVEN | IIED

Oklahoma recognizes the tort of IIED as an independent tort governed by the narrow standards of the Restatement (Second) of Torts § 46 (1977). Breeden v. League Servs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1378. To state a claim for IIED, plaintiffs must allege facts that could reasonably show (1) McClain acted intentionally or recklessly, (2) McClain's conduct was extreme and outrageous, (3) the conduct caused J.S. emotional distress, and (4) the emotional distress was severe. *See* Durham v. McDonald's Rests. of Okla., Inc., 2011 OK 45, ¶ 4, 256 P.3d 64, 66. To

---

[9] TPSD is a "political subdivision" to which the GTCA applies. *See* id. § 152(11)(b); *see also* id. § 152(7) (defining "employee" as "any person who is authorized to act on behalf of a political subdivision[.]").

prevail on the second element, plaintiffs must set forth allegations showing McClain's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." Comput. Publs, Inc. v. Welton ("Welton"), 2002 OK 50, ¶ 9, 49 P.3d 732, 735 (citation omitted); *see also* Eddy v. Brown, 1986 OK 3, ¶ 7, 715 P.2d 74, 75 (holding liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). For purposes of his Motion, McClain assumes plaintiffs have sufficiently pled the first and fourth elements. [Doc. 101 at 21 & n.6].

With respect to the second element, plaintiffs allege McClain "engaged in a sustained campaign of fear, hatred, and bigotry aimed at breaking the spirit, ruining the reputation, and stunting the sexual and social development of an eleven-year-old child" and "used his position of authority" to "isolate, intimidate, and harm J.S. through a variety of tactics[.]" [Doc. 106 at 4]. Such tactics included, without limitation: (i) McClain telling "J.S.'s peers that J.S.'s attempts to play in the ordinary manner of elementary school children was sexual and freakish"; (ii) McClain encouraging J.S.'s classmates to join him in calling J.S. a "f*g"; and (iii) McClain instructing J.S.'s classmates "that they ought not draw penises in their notebooks" because J.S. is "queer" and "incapable of handling that sort of thing." [*Id.* (*citing* Doc. 93, ¶¶ 44-46, 62]. McClain points to numerous cases in support of the proposition that "yelling, verbal reprimands, cursing, verbal altercations, or similar actions are insufficient" to clear the "extreme and outrageous" hurdle. *See* [Doc. 101 at 22-24].

23

The IIED claims in these cases, however, do not involve minors and arose from less egregious allegations than those asserted against McClain. Ultimately, McClain's position—namely, it is not "extreme or outrageous" when a teacher repeatedly targets an eleven-year-old boy in front of his male peers through yelling and the use of derogatory language, homophobic slurs, and unequal treatment— is unpersuasive

Turning to the third element, plaintiffs allege McClain "screamed, berated, and belittled until J.S. cried in front of all of his male friends and counterparts on more than one occasion," and then "blamed J.S.'s lack of masculinity—or male "maturity"— for his sensitivity to the mistreatment. [Doc. 106 at 4 (*citing* Doc. 93, ¶¶ 37-38, 62)]. They further allege that, as a result of McClain's conduct, J.S. "suffered mental and emotional distress, mental pain and suffering, anguish, humiliation, embarrassment, anger, and worry[.]" [Doc. 93, ¶ 312]. McClain responsively contends that J.S. did not know enough about the terms "queer" and "f*g" to be distressed at the time McClain introduced those words into the classroom, and if J.S. had not later asked Mr. Stepp to define such slurs, he would not have suffered significant distress. [Doc. 101 (*citing* Doc. 93, ¶ 51)]. This argument—that J.S. could not have suffered emotional distress from being called "queer" and "f*g" because he did not initially understand the meaning of those slurs—reflects a flawed understanding of the law and of human experience. To suggest that an eleven-year-old child must comprehend the precise semantic content of homophobic epithets in order to be harmed by them ignores the obvious: that disparaging words, particularly when repeated publicly by a figure of authority, carry emotional weight independent of a child's technical understanding.

24

Worse still, McClain's argument attempts to shift responsibility for the harm he allegedly caused not only onto the child, but onto the child's father—reasoning that, had the boy never asked his father what the slurs meant, he might have remained unharmed. This a striking example of what some courts have termed the "ostrich method" of argumentation: a refusal to confront obvious facts by burying one's head in the sand. *See* Gonzalez-Servin v. Ford Motor Co., 662 F.3d 931, 934 (7th Cir. 2011) ("The ostrich is a noble animal, but not a proper model for an appellate advocate.").

This court is tasked with acting as a "gatekeeper" to determine whether the acts complained of could "reasonably be regarded as sufficiently extreme and outrageous." Miller v. Miller, 1998 OK 24, ¶ 34, 956 P.2d 887, 901. The test is whether McClain's alleged conduct "has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." Durham, ¶ 9, 256 P.3d at 67. In other words, plaintiffs must allege facts that allow this court to reasonably infer "that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" Welton, ¶ 9, 49 P.3d at 735. Accepting all well-pleaded factual allegations as true, the court finds that McClain's targeted use of derogatory language, homophobic slurs, and belittling tactics toward an eleven-year-old boy in front of his male peers may reasonably be regarded as meeting this test. *See* Miller, ¶ 37, 956 P.2d at 902. The court further finds reasonable people could conclude that such conduct meets the extreme and outrageous test. Id. at ¶ 34. McClain's request for dismissal of Count Eleven is therefore denied.

### B.   Count Thirteen | Gender Discrimination

Oklahoma House Bill 1775 ("HB 1775" or "the Act") was signed into law on May 7, 2021. The Act, codified in 70 O.S. § 24-157, and its implementing regulations, codified in Oklahoma Administrative Code (OAC) 210:10-1-23, prohibit the training or teaching of specified subjects in Oklahoma schools. In the present case, plaintiffs allege McClain "required or made part of his teaching or coursework discriminatory principles" prohibited by 70 O.S. §§ 24-157(B)(1)(a), (c), (e), and (g).[10] [Doc. 93, ¶ 334]. McClain argues Count Thirteen is subject to dismissal under Rule 12(b)(6) because there is no private right of action for violation of HB 1775 and, even if this were not so, TPSD would be the only proper party to such a claim. [Doc. 101 at 24-27]. According to plaintiffs, however, HB 1775 creates an implied private right of action. [Doc. 105 at 29].

Under Oklahoma law, a private right of action can be implied from a regulatory or public-law statute if the following elements are met: (1) the plaintiff is of the class for whose benefit the statute was created; (2) some indication of legislative intent, explicit or implicit, suggests that the Legislature intended to create a private remedy, rather than deny the same; and (3) implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme. Owens v. Zumwalt, 2022 OK 14, ¶ 10, 503 P.3d 1211, 1215. For purposes of his Motion, McClain only

---

[10] The Oklahoma Attorney General and his office are presently enjoined from enforcing certain portions of HB 1775. *See* Black Emergency Response Team v. Drummond ("Black"), 737 F.Supp.3d 1136 (W.D. Okla. June 14, 2024). This preliminary injunction effects one of the four provisions on which plaintiffs rely—*i.e.*, "[n[o teacher . . . shall require or make part of a course" the concept that "an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex[.]" 70 O.S., § 24-157(B)(1)(c); Black, *supra*, at 1157.

disputes plaintiffs' ability to meet the second element. [Doc. 101 at 25]. In evaluating the second prong, courts must determine legislative intent by "looking at the precise wording of the [statute] and studying its history." Holbert v. Echeverria, 1987 OK 99, ¶ 11, 744 P.2d 960, 964.

The court finds no legislative intent, either implied or explicit, in HB 1775 to create a private remedy for violations of said statute. Rather, the Act is a legislative grant of authority to the Oklahoma State Board of Education (OSBE) to "promulgate rules" and "implement the [Act's] provisions." *See* 70 O.S. § 24-157(B)(2). The penalties set out for violation of the Act are administrative. *See* OAC 210:10-1-23(j). Both state and federal courts have held the second prong unsatisfied where a statute granted regulatory authority to an administrative agency rather than explicitly creating a private right of action within the statute itself.[11] Plaintiffs nevertheless contend that, in exercising its authority to promulgate rules under the Act, the OSBE recognized a private right of action in March of 2022:

> Title VI and Title IX may be enforced by private right of action, whereby aggrieved parties may seek relief, including monetary damages, for violations of federal antidiscrimination laws. Victims of discrimination may file a lawsuit directly against the Public School. In addition to any private rights of action, aggrieved parties may seek applicable remedies through the U.S. Department of Education's Office for Civil Rights or the U.S. Department Justice's Civil Rights Division.

---

[11] *See e.g.*, Nichols Hills Physical Therapy v. Guthrie, 1995 OK CIV APP 97, ¶ 9, 900 P.2d 1024, 1026 ("Had the legislature intended to provide an injured patron with the right of private action . . . it would have explicitly done so."); Thomas v. Metro. Life Ins. Co., 540 F.Supp.2d 1212, 1230 (W.D. Okla. Jan. 10, 2008) ("When a statute grants enforcement authority to an administrative agency or officer, this grant implies the legislature did not intend to provide a private right of action."); Risk v. Allstate Life Ins. Co., No. 4-CV-333-CVE-FHM, 2006 WL 2021597 at *3 (N.D. Okla. July 17, 2006) ("In terms of statutory construction, the inclusion of administrative enforcement impliedly excludes a private right of action.") (*citing* Holbert, ¶¶ 15-16, 744 P.2d at 965).

[Doc. 105 at 30 (*citing* OAC 210:10-1-23(o))]. McClain argues the implementing regulations were not in force at the time he allegedly violated the Act. Indeed, the pertinent regulations went into effect on September 11, 2022. *See* 39 Okla. Reg. 992, 2022 OK REG TEXT 603412 (NS). According to the SAC, J.S. was last in McClain's classroom on August 29, 2022. [Doc. 93, ¶ 84]. While plaintiffs contend the alleged improper conduct spanned a time period from mid-August 2022 to mid-October 2022 [Doc. 105 at 31 (*citing* Doc. 94, ¶¶ 138-141)], the allegations against McClain under Count Thirteen are limited to the discriminatory principles he implemented through teaching or coursework in J.S.'s classroom. To the extent the Act provides for an implied private right of action against teachers, plaintiffs' claim for violation of HB 1775 against McClain fails because the implementing regulations went into effect *after* his purported violation of the Act. McClain's request for Rule 12(b)(6) dismissal of Count Thirteen is therefore granted.[12]

## C.    COUNT FIFTEEN | CIVIL CONSPIRACY

According to the Oklahoma Supreme Court, the tort of civil conspiracy:

> . . . consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the *act* of and the *means employed* are lawful.

Brock v. Thompson, 1997 OK 127, ¶ 38, 948 P.2d 279, 294 (footnotes omitted) (emphasis in original). McClain argues that plaintiffs fail to allege he entered into

---

[12] Even if McClain's purported violation of the Act occurred after the implementing rules went into effect, he would otherwise be exempt from liability on Count Thirteen under § 163(C) of the GTCA.

any agreement with any other defendant to perform an unlawful act or to use unlawful means. [Doc. 101 at 29]. *See* Gaylord Entm't Co. v. Thompson, 1998 OK 30, ¶ 40, 958 P.2d 128, 148 ('In order to be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means."). The court agrees, as only the following defendants are alleged to have entered into agreements under Count Fifteen: Anderson and Lockhart [Doc. 93, ¶ 350]; Anderson and Russell [*Id*. ¶ 351]; Anderson, Lockhart, Russell, Blue, Crank, Moreland, and Woods [*Id*. ¶ 352]; Bryant and Blair [*Id*. ¶ 353]. McClain is consequently exempt from liability under § 163(C) of the GTCA, and his request for dismissal of Count Fifteen under Rule 12(b)(6) is granted.

## V.    CONCLUSION

Based on the foregoing, McClain's motion to dismiss [Doc. 101], filed December 26, 2024, is **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of each claim asserted against McClain in the SAC is as follows:

- Count Four. The § 1983 procedural due process sub-claim is dismissed for failure to state a claim against McClain. The § 1983 substantive due process and equal protection sub-claims remain pending against McClain.

- Count Seven. The § 1983 conspiracy claim is dismissed for failure to state a claim against McClain.

- Count Eleven. The claim for intentional infliction of emotional distress remains pending against McClain.

- Count Thirteen. The claim for violation of HB 1775's prohibition against gender discrimination in public education is dismissed for failure to state a claim against McClain.

- Count Fifteen. The claim for civil conspiracy is dismissed for failure to state a claim against McClain.

**IT IS SO ORDERED** this 17th day of April, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE