# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER STEPP and JONATHON STEPP, individually and as parents and next friends of J.S., a minor child, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) Case No. 6:24-cv-146-JAR |
| TALIHINA PUBLIC SCHOOL DISTRICT, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Plaintiffs Amber and Jonathon Stepp (the "Stepps"), individually and as parents and next friends of J.S., a minor child, filed a complaint on April 23, 2024, which they amended on May 30, 2024, and again on December 5, 2024. The second amended complaint ("SAC") [Doc. 93][1] asserts fifteen claims against eleven defendants for alleged violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, the First, Fifth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"), the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1701 *et seq.*, and Oklahoma law.

Before the court is the renewed joint motion to dismiss ("Motion") [Doc. 100] filed on behalf of ten defendants:[2] Independent School District No. 52 of LeFlore County, Oklahoma, commonly known as Talihina Public School District ("TPSD");

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

[2] The eleventh defendant, Kevin McClain ("McClain"), filed a separate motion to dismiss the SAC on December 26, 2024. [Doc. 101]. On April 17, 2025, the court entered an Order granting in part and denying in part McClain's dismissal motion. [Doc. 124].

Jason Lockhart, in his individual capacity as TPSD's superintendent and as a member of the TPSD Board of Education (the "Board"); Kathy Anderson, in her individual capacity as the principal of Talihina Elementary; Bill Blair, in his individual capacity as a teacher and Title IX officer for Talihina Elementary; Rusty Blue, in his individual capacity as a Board member; Tracy Bryant, in his individual capacity as a teacher and Title IX officer for Talihina Elementary; Leslie Crank, in his individual capacity as a member and clerk of the Board; Courtney Moreland, in her individual capacity as a Board member; Scottie Russell, in his individual capacity as a member and president of the Board; and Steve Woods, in his individual capacity as a member and vice president of the Board. The Motion seeks dismissal of the SAC pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a), the doctrine of qualified immunity, and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 *Okla. Stat.* ("O.S.") § 151 *et seq*. Plaintiffs filed a response opposing the Motion [Doc. 105], and the moving defendants timely replied [Doc. 111].

## I.    BACKGROUND

### A.    PLAINTIFFS' ALLEGATIONS

At the time of the events in question, J.S. was an eleven-year-old student enrolled in the fifth grade at Talihina Elementary. [Doc. 93, ¶ 31].[3] Beginning in August 2022 and at the direction of TPSD's superintendent, defendant Jason Lockhart ("Supt. Lockhart" or "Lockhart"), and the Talihina Elementary principal,

---

[3] TPSD is a political subdivision and body corporate of the State of Oklahoma, duly created and charged with the operation of Talihina Elementary School. [*Id.* ¶ 2 (*citing* 70 O.S. §§ 1-108, 5-101, 5-103, 5-105)].

defendant Kathy Anderson ("Principal Anderson" or "Anderson"), fifth-grade students were segregated into two classes solely on the basis of gender. The all-boys class was taught by defendant McClain, and the all-girls class was taught by a female teacher. [*Id.* ¶¶ 21-22, 30]. This policy left fifth-grade students at Talihina Elementary with no option but to attend gender-segregated classes. [*Id.* ¶ 33]. The members of TPSD's Board—defendants Blue, Crank, Lockhart, Moreland, Russell, and Woods (the "Board Members")—were aware of the segregation policy and either explicitly or tacitly approved of the same. [*Id.* ¶ 23].

During the first week of the 2022-2023 school year—the week of August 16—McClain frequently yelled at J.S. and his classmates. During the second week of school—the week of August 22—McClain began targeting J.S. in several ways, including berating J.S. until he was reduced to tears and prohibiting J.S. from leaving the classroom when he reportedly felt unwell despite allowing another student to do so three separate times for the same reason. On August 24, a concerned parent of another fifth-grade boy contacted Mrs. Stepp regarding McClain's use of derogatory and harassing language during class. Mr. Stepp met with Supt. Lockhart the following day to report McClain's treatment of J.S. and to raise concerns about his son's safety and well-being at school. TPSD responded by placing a "hall monitor" outside McClain's classroom to observe teacher-student interactions. [*Id.* ¶¶ 34-42].

While this hall monitor was purportedly on duty, McClain raised additional inappropriate topics with his students, including but not limited to encouraging discussions about kissing girls, instructing his students not to draw male genitalia

3

because J.S. was "queer" and, after witnessing J.S. playfully roughhouse with friends, instructing his students to yell "f*g alert" upon unwanted contact from classmates. [*Id.* ¶¶ 43-45]. J.S. subsequently informed his father a classmate had advised that the next time McClain called him "queer," J.S. should respond by calling McClain a different homophobic slur. Mr. Stepp, shocked by this language, explained the meaning of these slurs to J.S.—who immediately began to cry and question why a teacher would call him those names. [*Id.* ¶¶ 50-52].[4] On or around the same date Mr. Stepp learned of McClain's name-calling, Mrs. Stepp separately learned of the same from a concerned grandparent of another fifth-grade boy. [*Id.* ¶ 55].

During a subsequent phone call with the Stepps, McClain admitted to yelling at his class, using the phrase "f*g alert," and discussing male genitalia with his fifth-grade students in a manner that targeted J.S. [*Id.* ¶¶ 46, 62-63]. McClain further acknowledged that his conduct was generally inappropriate for fifth-grade students, and that he would not have used certain terms or raised certain topics had fifth-grade girls been present. Soon thereafter, the Stepps informed Principal Anderson of their intent to file a formal complaint against McClain. Upon information and belief, multiple defendants—including Lockhart, McClain, Anderson and Talihina Elementary's then-designated Title IX officer, Rebecca McLemore[5] ("McLemore")—privately discussed the Stepp's concerns about McClain's behavior and coordinated a responsive strategy for the imminent Title IX complaint. [*Id.* ¶¶ 64-65].

---

[4] When Mr. Stepp met with Supt. Lockhart on or about August 25, 2022, he was not yet aware of McClain's targeted use of discriminatory slurs. [*Id.* ¶ 49].

[5] Plaintiffs voluntarily dismissed Rebecca McLemore as a defendant to this action by way of omitting her from the caption page of their SAC. *Compare* [Doc. 12 at 1] *with* [Doc. 93 at 1].

On or about August 29, 2022, the Stepps met with Lockhart, McClain, and McLemore to gather pertinent information regarding the Title IX process and TPSD's grievance procedures. Lockhart prohibited McLemore from speaking during this meeting and the Stepps received little, if any, information on how to file a formal Title IX complaint. [*Id.* ¶¶ 66-67, 69]. McLemore contacted Mrs. Stepp directly after the meeting to apologize and recommend that the Stepps complete an Alleged Sexual Harassment Form ("Form"). The Stepps submitted a completed Form that same day, and TPSD officials treated said Form as a formal complaint of sexual harassment under Title IX. [*Id.* ¶¶ 71-73]. Other than being pointed to the Form, the Stepps received no instruction concerning Talihina Elementary's grievance process or its procedure for resolving formal complaints under Title IX. [*Id.* ¶ 76].[6]

On the same day the Stepps submitted the Title IX complaint, TPSD removed J.S. from the all-boys class but refused to remove McClain from the same pending resolution of the Title IX investigation. [*Id.* ¶¶ 94-97]. Eventually, Principal Anderson worked with the Stepps to create a modified school schedule wherein J.S. would attend the Language Arts class for one period and would, for the remainder of the school day, be kept alone in the library. [*Id.* ¶ 100]. The Stepps had no choice but to accept Anderson's modified schedule proposal, as they had refused an offer to place J.S. in the all-girls class due to concerns such a placement would further stigmatize and ostracize their son. [*Id.* ¶¶ 99, 101]. While the Title IX investigation was ongoing,

---

[6] Because TPSD officials failed to provide the Stepps with any notice of their rights as Title IX complainants, the Stepps were never informed as to the identity of the Title IX coordinator designated by Talihina Elementary and were unaware of their right to retain an advisor to assist in navigating the Title IX process. [Doc. 93, ¶¶ 82, 84].

J.S. received little to no general instruction from teachers and received none of the special education support provided for in his Individual Education Plan ("IEP"). [*Id.* ¶¶ 100, 102, 105]. J.S.'s grades dropped as a result, and TPSD deemed him ineligible to participate in extracurricular activities—such as basketball. [*Id.* ¶¶ 103-04]. At some point between August 29 and October 12, the Stepps decided J.S. would receive a better education if he were homeschooled and withdrew their son from Talihina Elementary. [*Id.* ¶ 336; Doc. 93-3 at 2].

On or about August 30, 2022, McLemore met with Principal Anderson to discuss matters concerning the Title IX investigation. During this meeting, Anderson confirmed she would provide McLemore with notes summarizing her communications with Supt. Lockhart and McClain regarding the Stepp's complaint. [Doc. 93, ¶¶ 107-08]. On September 1, however, Anderson refused to provide McLemore with any notes memorializing her admitted conversations with Lockhart and McClain. According to a Title IX "Contact Sheet" completed by McLemore, Anderson and Lockhart had privately determined Principal Anderson's notes and recollection were irrelevant to the investigation. [*Id.* ¶¶ 112-13]. McLemore abruptly resigned as a Title IX officer the following week, stating: "[I]t is very apparent to me that I am not qualified to fulfill this position. I believe to continue in this role would set me in a place of ethical and professional liability." [*Id.* ¶¶ 118-19].

On September 6, 2022, the Stepps attended a public meeting of the Board and, along with other parents and guardians of students in the all-boys class, presented their concerns regarding McClain's behavior and TPSD's ongoing segregation policy.

The Board Members heard the Stepp's presentation but asked no questions, made no comments, and offered no solutions. After the meeting, the Board Members declined to take any action relating to McClain's alleged behavior or the school district's segregation policy. [*Id.* ¶¶ 115-17]. At this point, the Stepps had yet to receive any instruction on TPSD's policies governing sexual harassment grievance procedures and the Title IX process. Upon information and belief, TPSD maintained no such policies and additionally failed to provide Title IX training to any school employees—including designated Title IX officers. [*Id.* ¶¶ 90-92, 194].

Following McLemore's resignation on September 8, 2022, TPSD designated defendants Bill Blair ("Blair") and Tracy Bryant ("Bryant") as Talihina Elementary's new Title IX officers. [*Id.* ¶ 121]. Blair and Bryant quickly completed the Title IX investigation without interviewing plaintiffs or any parents of other fifth-grade boys who reported McClain for misconduct. [*Id.* ¶¶ 121-29]. Because the Stepps neither received a copy of the school district's Title IX policy nor any notice of their rights under Title IX, they were unaware of their right to inspect and review evidence gathered before issuance of an investigative report. [*Id.* ¶ 86]. Mr. Stepp simply received a call from Principal Anderson on September 17 notifying him the investigation was closed, that no further information would be provided, and that J.S. may immediately return to McClain's all-boys class. [*Id.* ¶¶ 133, 136].

Unbeknownst to the Stepps at the time, on September 29, the Oklahoma State Department of Education ("OSDE") issued a letter to TPSD and Lockhart advising that Talihina Elementary's policy of segregating fifth-grade classes on the basis of

gender violated federal civil rights laws, including Title IX, and directing integration of fifth-grade classes by no later than October 10, 2022. [*Id*. ¶¶ 138-41; Doc. 93-3]. In response to questions from aggravated parents regarding the forced integration, Anderson name-dropped plaintiffs, pressed her view that their allegations against McClain were unsubstantiated, and lamented that plaintiffs had caused an unwanted disruption by contacting OSDE. In a meeting with Mr. Stepp on October 10, Anderson accused those parents of lying about her above-mentioned communications. She also contended that Mr. Stepp was a "liar" and accused plaintiffs of "inciting" and "encouraging" violence against Talihina Elementary. [Doc. 93, ¶¶ 147-52].

J.S. returned to his first full day of integrated classes on October 12, 2022. For at least two of his afternoon classes, Blair—who was also a fifth-grade social studies teacher—required J.S. to sit alone on the floor despite a desk being available. [*Id*. ¶ 333]. The following week, Mr. Stepp approached Blair during J.S.'s basketball game to inquire about his son being forced to sit on the floor. [*Id*. ¶ 159]. In response, Blair engaged in a public, defamatory, profanity-laced tirade against plaintiffs and threatened physical violence. [*Id*. ¶ 160 (*e.g.*, "Why don't you just bring you're a** outside?" and "You just need to keep your f*cking mouth shut" and "[J.S.] is a liar.")]. Blair and his family members were eventually escorted from the gym by school officials and lingered outside for some time. The Stepp family exited through a back door so as to avoid further confrontation. [*Id*. ¶ 162-64]. Following the 2022-2023 school year, the Stepps withdrew their children from Talihina Elementary—the only public school in their vicinity—because they felt they could not safely report sexual

harassment or bullying if and/or when such issue arose in the future. To date, J.S. and his four younger siblings remain homeschooled. [*Id*. ¶¶ 167-69].

B.    SUMMARY OF PERTINENT PLEADINGS

On March 4, 2025, the court held an in-person hearing and heard oral arguments from all parties on the pending dismissal pleadings. *See* [Doc. 120]. At the hearing, counsel for plaintiffs voluntarily abandoned the EEOA claim (Count Eight) in its totality and the defamation claim (Count Twelve) as asserted against TPSD. [*Id*.]. The SAC accordingly asserts thirteen operative counts against the moving defendants, seeking relief in the form of actual and punitive damages:

> **Count One** alleges a sex-segregation claim under Title IX, asserting that TPSD violated J.S.'s statutory right to be free from gender discrimination by implementing a policy to segregate fifth grade students at Talihina Elementary on the basis of sex;

> **Count Two** alleges a sexual harassment claim under Title IX, asserting that TPSD violated J.S.'s statutory right to be free from sexual harassment by failing to act against McClain's known pattern of harassment toward J.S.;

> **Count Three** alleges a retaliation claim under Title IX, asserting that TPSD retaliated against plaintiffs for filing a Title IX complaint by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

> **Count Four** alleges a municipal liability claim under § 1983, asserting that TPSD violated J.S.'s statutory rights under Title IX and his constitutional rights to equal protection, procedural due process, and substantive due process by adopting, implementing, and enforcing an official policy of gender-based segregation;

> **Count Five** appears to allege supervisory liability claims under § 1983, asserting that Anderson and the Board Members violated J.S.'s statutory rights under Title IX and constitutional rights to equal protection, procedural due process, and substantive due process by ratifying and enforcing TPSD's unlawful segregation policy;

9

**Count Six** alleges retaliation claims under § 1983, asserting that Anderson, Blair, and Bryant retaliated against plaintiffs for filing a Title IX complaint and for criticizing their deficient Title IX investigation by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

**Count Seven** alleges a conspiracy claim under § 1983, asserting that all moving defendants entered into an agreement to deprive plaintiffs of their constitutional and statutory rights under the Title IX process;

**Count Nine** alleges retaliation claims under § 1983, asserting that TPSD and the Board Members retaliated against plaintiffs for filing a Title IX complaint by engaging in acts to interfere with plaintiffs' statutory and constitutional rights under the Title IX process;

**Count Ten** alleges claims for negligence, negligent supervision and negligence *per se*, asserting that TPSD and the Board Members breached four basic duties owed to J.S. under Oklahoma law;

**Count Twelve** alleges defamation claims under Oklahoma law, asserting that Anderson and Blair knowingly made false statements about plaintiffs to third parties;

**Count Thirteen** alleges a gender discrimination claim under Oklahoma law, asserting that TPSD, Lockhart, Anderson and Blair required or made part of J.S.'s curriculum certain discriminatory principles prohibited by 70 O.S. § 24-157;

**Count Fourteen** alleges an assault claim under Oklahoma law, asserting that Blair physically rushed the Stepps during an elementary school basketball game, threatened them with immediate physical harm, made assaulting remarks, and recruited others to join his actions;

**Count Fifteen** alleges a civil conspiracy claim under Oklahoma law, asserting that all moving defendants entered into an agreement to deprive plaintiffs of statutory protections under Title IX and 70 O.S. § 24-157.

The moving defendants filed their Motion on December 19, 2024. In their Motion, they argue that Counts One and Two are legally deficient and subject to Rule 12(b)(6) dismissal; Counts Three, Four, Five, Six, Seven, Nine, and Fifteen are not remotely supported by factual allegations and should be dismissed for failure to state a claim; the individual moving defendants are entitled to qualified immunity on

plaintiffs' § 1983 claims; Count Thirteen must be dismissed because there is no private right of action under 70 O.S. § 24-157; all moving defendants are entitled to immunity under the GTCA on plaintiffs' state law claims; and Counts Twelve and Fourteen are barred by the applicable limitations period.

## II.   STANDARD FOR MOTIONS TO DISMISS

Dismissal pursuant to Rule 12(b)(6)  "'is appropriate if the complaint alone is legally insufficient to state a claim.'" <u>Serna v. Denver Police Dep't</u>, 58 F.4th 1167, 1169 (10th Cir. 2023) (*quoting* <u>Brokers' Choice of Am., Inc. v. NBC Universal</u>, 861 F.3d 1081, 1104-05 (10th Cir. 2017)). When considering whether a claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving part. <u>S.E.C. v. Shields</u>, ("<u>Shields</u>") 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed. R. Civ. P. 8(a)(2)</u>. The complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief about the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Shields</u>, 744 F.3d at 640 (*quoting* <u>Ashcroft v. Iqbal</u> ("<u>Iqbal</u>"), 556 U.S. 662, 678 (2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific

11

task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, at 678-79. The Tenth Circuit has observed that the *Twombly / Iqbal* pleading standard is intended to "ensure[ ] that defendants know 'the actual grounds of the claim against them,'" in order for defendants to "prepare a defense." Bryson v. Gonzalez, 534 F.3d 1282, 1287 (10th Cir. 2008). In the context of § 1983 actions involving multiple claims against multiple defendants, the Tenth Circuit has further stated that "it is particularly important" for a complaint to "make clear exactly *who* is his alleged to have done *what* to *whom*" so that each defendant has "fair notice as to the basis of the claims" against them. Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original) (citation omitted).

## III.  CLAIMS FOR VIOLATIONS OF TITLE IX

Plaintiffs asserts three causes of action against TPSD under Title IX, alleging gender discrimination (Count One), sexual harassment (Count Two), and retaliation (Count Three). Title IX prohibits educational institutions that receive federal assistance from engaging in discrimination on the basis of sex. *See* 20 U.S.C. § 1681(a). Congress enacted Title IX with two principal objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). Thus, the Supreme Court has recognized an implied private right of action to enforce Title IX against a recipient of federal education funds. *See* id. at 717; *see also* Franklin v. Gwinnett Cty. Pub. Schs., 503

U.S. 60, 76 (1992) (holding a damages remedy is available for an action brought by private parties to enforce Title IX).

### A.    COUNT ONE | GENDER SEGREGATION

To state a Title IX claim for gender segregation, a plaintiff must allege facts showing: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex. Seamons v. Snow, 84 F.3d 1226, 1231 (10th Cir. 1996) (citations omitted). Count One arises from allegations that TPSD, as a program that receives federal funds conditioned upon compliance with Title IX, unlawfully discriminated against J.S. by implementing a policy providing for fifth-grade classes separately at Talihina Elementary on the basis of sex, and by requiring and refusing student participation in classes on the basis of sex. TPSD contends Count One should be dismissed under Rule 12(b)(6) because plaintiffs fail to allege facts involving any sexual harassment of J.S. by a school employee. [Doc. 100 at 15]. Such contention is irrelevant, however, as Count One arises from allegations of gender segregation rather than sexual harassment. As for the claim asserted, plaintiffs focus primarily on the conceded fact that TPSD segregated fifth-grade classes at Talihina Elementary explicitly on the basis of sex. TPSD's purported conduct is directly prohibited by Title IX. *See* 20 U.S.C. § 1681(a). The court concludes that plaintiffs have sufficiently alleged facts to state a plausible Title IX claim against TPSD for discrimination on the basis of gender. The court denies TPSD's Motion as to Count One.

### B.   COUNT TWO | DELIBERATE INDIFFERENCE TO TEACHER-ON-STUDENT SEXUAL HARASSMENT

Sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX. Escue v. N. Okla. College, 450 F.3d 1146, 1152 (10th Cir. 2006). A school district that receives federal funds is not vicariously liable to its students for all sexual harassment caused by teachers, but a student may hold a school liable for its own misconduct. Forth v. Laramie Cty. Sch. Dist. No. 1, 85 F.4th 1044, 1053 (10th Cir. 2023) (citations omitted). A student seeking relief under this theory must demonstrate:

> (1) an appropriate person . . . with authority to take corrective action to end the discrimination (2) had actual knowledge of discrimination in the recipient's programs but (3) fail[ed] adequately to respond in a manner amounting to deliberate indifference, and (4) the harassment was so severe, pervasive and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school.

Id. (alterations in original) (citations and quotations omitted). TPSD contends that Count Two should be dismissed under Rule 12(b)(6) because plaintiffs cannot prevail on the second and third elements.

As to the second element, TPSD asserts the SAC fails to allege facts showing the school district was deliberately indifferent to McClain's "known" sexual harassment. [Doc. 100 at 16]. But the SAC clearly alleges facts indicating TPSD had actual notice of McClain's harassment of J.S. by August 25, 2022. [Doc. 93, ¶¶ 34-41]. Despite placing a school official outside McClain's classroom to monitor for inappropriate behavior, plaintiffs allege McClain's harassment of J.S. continued without any administrative intervention. [*Id.* ¶¶ 42-45]. After meeting with Supt.

14

Lockhart, Principal Anderson, McClain, and McLemore on August 29, 2022, plaintiffs submitted a Title IX complaint against McClain. [*Id.* ¶¶ 71-74]. These factual allegations permit an inference that TPSD, by and through appropriate persons with authority to take corrective action, had actual knowledge of McClain's purported harassment of J.S. prior to the filing of plaintiffs' complaint.

Turning to the third element, TPSD contends the SAC fails to allege facts showing the school district was "deliberately indifferent" to McClain's alleged conduct because TPSD designated multiple employees to investigate plaintiffs' complaint. [Doc. 100 at 16-17]. "Deliberate indifference exists where the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Forth</u>, 85 F.4th at 1069 (internal citations and quotations omitted). The SAC alleges that, because TPSD neither had a policy prohibiting gender discrimination nor a grievance procedure for resolving Title IX complaints, school officials undertook an impromptu, biased, and deficient investigation which was clearly unreasonable under the circumstances. [*Id.* ¶¶ 193-94]. This otherwise conclusory assertion is supported by the following factual allegations: Lockhart and Anderson refused to provide plaintiffs with any information regarding the Title IX process or their rights thereunder [*Id.* ¶¶ 66-67]; as a designated Title IX officer, McLemore admittedly was unfamiliar with relevant grievance procedures [*Id.* ¶¶ 70-71]; Anderson withheld pertinent information from McLemore during the Title IX investigation [*Id.* ¶¶ 108-113]; TPSD officials withheld information requested by plaintiffs throughout the Title IX process [*Id.* ¶¶ 77, 81-92]; following McLemore's

15

resignation, the newly designated Title IX officers—Blair and Bryant—failed to interview J.S., his parents, or any students in the all-boys class [*Id*. ¶¶ 123-24]; and Anderson wrongfully disclosed plaintiffs' identities as the Title IX complainants to other parents of Talihina Elementary students [*Id*. ¶ 147].

Although "the minimum required response to avoid 'deliberate indifference'" is "a legitimate investigation," Lang v. Herrara, No. 12-CV-392-JHP-TLW, 2013 WL 4500739 at *5 (N.D. Okla. Aug. 21, 2013), it would be unreasonable to view TPSD's purported response as "legitimate." The court finds the alleged acts and omissions attributed to TPSD in Count Two to be "clearly unreasonable in light of the known circumstances." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 643 (1999). As plaintiffs' allegations permit an inference that TPSD was deliberately indifferent in its response to their sexual harassment complaint, the court concludes that plaintiffs have stated a plausible Title IX claim against TPSD for deliberate indifference to sexual harassment. The court denies TPSD's Motion as to Count Two.

## C.   COUNT THREE | RETALIATION UNDER TITLE IX

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). To state a claim for retaliation under Title IX, plaintiffs must allege facts showing (1) they engaged in protected opposition to discrimination, (2) a reasonable person would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.

16

Id. at 173-74. TPSD challenges only the second prong under Rule 12(b)(6), arguing that none of plaintiffs' allegations amount to a response which a reasonable person would interpret as materially adverse or as an act which would chill a reasonable individual from continuing to engage in protected conduct. [Doc. 100 at 25].

The SAC plainly asserts that TPSD, by and through the conduct of school officials, undertook actions in response to the Stepp's Title IX complaint that were intended to be, and in fact were, materially adverse to plaintiffs' protected interests. Specifically, plaintiffs allege that TPSD removed J.S. from McClain's classroom—over the Stepp's objections and without providing an equitable educational alternative—immediately following the Stepp's submission of the Title IX complaint [Doc. 93, ¶ 1, 94-98, 102-05]; Anderson unlawfully disclosed to third parties plaintiffs' identities as the complainants [Id. ¶ 148];[7] Anderson and Blair circulated defamatory statements about plaintiffs in relation to the Title IX complaint and underlying allegations [Id. ¶¶ 147, 149, 152, 160]; and, following his contribution to the purportedly deficient Title IX investigation, Blair assaulted the Stepps at a school function after forcing J.S. to sit alone on a classroom floor despite a desk being available [Id. ¶¶ 153-60]. Accordingly, the court concludes plaintiffs have stated a plausible Title IX retaliation claim against TPSD. The court denies the school district's Motion as to Count Three.

---

[7] Plaintiffs correctly note that Anderson's purported disclosures directly violate Title IX's rules on retaliation. [Doc. 105 at 16 (citing 34 C.F.R. § 106.71(a))]. *See also* 34 C.F.R. §§ 106.45(b)(5), (7).

## IV.    CLAIMS FOR § 1983 VIOLATIONS

Plaintiffs assert five causes of action under § 1983, alleging municipal liability (Count Four), supervisory liability (Count Five), conspiracy (Count Seven), and retaliation (Counts Six and Nine).

### A.    INTRODUCTION

A successful § 1983 plaintiff must show: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The moving defendants do not dispute that they were acting under color of state law; thus, the key issue is whether plaintiffs have sufficiently alleged the purported constitutional deprivations.

### 1.    Preemption

To the extent plaintiffs purport to hold any of the moving defendants liable under § 1983 for violations of their statutory rights under Title IX, plaintiffs are precluded from doing so pursuant to the comprehensive remedies available under Title IX. *See* Seamons, 84 F.3d at 1233 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.") (*quoting* Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20 (1981)).

### 2.    Distinction Between Individual and Official Capacity Claims

As noted, plaintiffs seek to hold the individual moving defendants liable under § 1983 in their individual (or personal) capacities *only*. "Personal capacity suits seek

18

to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u> ("<u>Graham</u>"), 473 U.S. 159, 165-66 (1985). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal asserts, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself." <u>Id</u>. at 166.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. <u>Id</u>. Thus, to hold the individual defendant liable under § 1983 in his or her individual capacity, plaintiffs must allege facts to establish each defendant's personal involvement in the purported deprivation. *See* <u>Schneider v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 768 (10th Cir. 2013). More is required to establish official capacity liability, however, "for a [municipality] is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Graham</u>, 473 U.S. at 166 (internal citations omitted). With this distinction in mind, it is clear that plaintiffs' § 1983 claims against the individual defendants in their personal capacities cannot lead to imposition of fee liability upon TPSD. *See* <u>id</u>. at 167. Such a result would be inconsistent with the well-settled

principle that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).[8]

### 3.    Qualified Immunity

The individual moving defendants are entitled to assert, and have asserted, the defense of qualified immunity as to all four § 1983 claims pending against them. *See* Maresca v. Bernalillo Cty., 804 F.3d 1301, 1307 (10th Cir. 2015) ("An official [sued in their individual capacity] may plead an affirmative defense of qualified immunity."). "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff "must allege facts sufficient to show (assuming they are true) that the [1] defendant plausibly violated their constitutional rights, and that [2] those rights were clearly established at the time" of the defendant's alleged conduct. Robbins, 519 F.3d at 1249.[9]  The court

---

[8] At its outset, the SAC notes that, "[i]n omitting from this amended complaint their official capacity claims against the individual defendants, [p]laintiffs have relied on the position of [d]efendants, including TPSD itself, that TPSD is the proper entity against which to bring their official capacity claims, that TPSD has capacity to sue and be sued on these claims, and that [p]laintiffs' prior official capacity claims against the individual [d]efendants merely duplicated the claims against TPSD." [Doc. 93 at 1 & n.2 (*citing* Doc. 29 at 13-14)]. While a § 1983 claim asserted against a school district and one or more school employees sued in their official capacity is unnecessarily duplicative, it is well-settled that a defendant school district **cannot** be held liable under a § 1983 claim asserted **only** against one or more school employees in their **individual capacity**. Conversely, a defendant school district **can** be subject to liability on a § 1983 claim asserted **only** against one or more school employees in their **official capacity**.

[9] A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). A relevant Supreme Court or Tenth Circuit decision is alone sufficient to establish a right for purposes of qualified immunity. A.N. v. Syling, 928 F.3d 1191, 1197 (10th Cir. 2019).

may assess these two inquiries in any order. *See* <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In making this assessment, the court must construe the SAC in the light most favorable to plaintiffs, accept all well-pleaded allegations as true, and draw all reasonable inferences in plaintiffs' favor. *See* <u>Bella v. Chamberlain</u>, 24 F.3d 1251, 1254 (10th Cir. 1994). If plaintiffs fail to satisfy either prong, the court must grant qualified immunity. *See* <u>Medina v. Cram</u>, 252 F.3d 1124, 1128 (10th Cir. 2011).

### 4.    § 1983 Claims for Equal Protection Violations

The Fourteenth Amendment prohibits States from denying "any person within its jurisdiction the equal protection of the laws." <u>U.S. Const. amend. XIV, § 1</u>. Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under § 1983. <u>Murrell v. Sch. Dist. No. 1, Denver</u>, 186 F.3d 1238, 1249 (10th Cir. 1999). Different types of equal protection claims call for different forms of review. A claim that a state actor discriminated on the basis of a suspect (*e.g.*, race), quasi-suspect (*e.g.*, gender), or non-suspect classification calls for strict, intermediate, or rational basis scrutiny—respectively. <u>Brown v. Montoya</u> ("<u>Montoya</u>"), 662 F.3d 1152, 1172 (10th Cir. 2011). But in each instance, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1312 (10th Cir. 1998). "One who alleges such an equal protection violation has the burden of proving the existence of purposeful discrimination causing an adverse effect." <u>Ashaheed v. Currington</u>, 7 F.4th 1236, 1250 (10th Cir. 2021). Conclusory allegations without facts that refer to a particular

person or persons treated differently are insufficient to state a claim. <u>Montoya</u>, 662 F.3d at 1173. Moreover, to permit municipal liability for an alleged equal protection violation, the complaint must plausibly suggest the plaintiff's injuries were the result of a discriminatory policy. <u>Lucas v. Turn Key Health Clinics, LLC</u>, 58 F.4th 1127, 1146 (10th Cir. 2023).

### 5.    § 1983 Claims for Procedural Due Process Violations

The Fourteenth Amendment also forbids States from depriving an individual of life, liberty, or property without due process of law. <u>Coutoure v. Bd. of Educ. of Albuquerque Pub. Schs.</u>, 535 F.3d 1243, 1256 (10th Cir. 2008). However, "the range of interests protected by the procedural due process clause is not infinite." <u>Bd. of Regents v. Roth</u> ("<u>Roth</u>"), 408 U.S. 564, 570 (1972). The procedural due process clause, however, does not safeguard an infinite number of interests; rather "[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: [1] that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and [2] that he was not afforded an appropriate level of process." <u>Coutoure</u>, 535 F.3d at 1256 (<i>citing</i> <u>Roth</u>, 408 U.S. at 570) (add'l citations omitted).

### 6.    § 1983 Claims for Substantive Due Process Violations

In certain limited circumstances, the State is obligated not just to limit its own deprivations of liberty and property interests, but to affirmatively "ensure that those interests do not come to harm through other means." <u>Rost v. Steamboat Springs RE-2 Sch. Dist.</u>, 511 F.3d 1114, 1125-26 (10th Cir. 2008). When government conduct does

not touch on a fundamental right, a cognizable due process claim exists only where the conduct is so egregious that it "shocks the conscience." <u>Seegmiller v. LaVerkin City</u>, 528 F.3d 762, 767 (10th Cir. 2008). Conduct that shocks the judicial conscience "is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" <u>Id</u>. (*quoting* <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998)). This "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort[.]" <u>Perez v. Unified Gov't of Wyandotte Cty.</u>, 432 F.3d 1163, 1168 & n.4 (10th Cir. 2005). Whether conduct shocks the conscience is a question of law for the court. <u>Id</u>.

### B.   COUNT FOUR | MUNICIPAL LIABILITY

Municipal liability of a governmental entity, such as TPSD, does not arise under § 1983 "for an injury inflicted solely by its employees or agents." <u>Monell</u>, 436 U.S. at 694. Liability may only be imposed upon a governmental entity "when the enforcement of [its] policies or customs by [its] employees causes a deprivation of a person's federally protected rights." <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1202 (10th Cir. 2010). To state a §1983 claim for municipal liability, a plaintiff must allege: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." <u>Myers v. Okla. Cty. Bd. of Cty. Comm'rs</u>, 151 F.3d 1313, 1316 (10th Cir. 1998). An entity cannot be held liable under § 1983 "unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's

deprivation of federal rights." <u>Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997). As to the first element, the court finds that plaintiffs have sufficiently alleged an official policy maintained by TPSD of segregating fifth-grade classes at Talihina Elementary on the basis of gender. *See* <u>Bryson v. City of Okla. City</u>, 627 F.3d 784, 788 (10th Cir. 2010) (listing all forms a "municipal policy or custom" may take).

Turning to the second element, plaintiffs must allege facts showing "a direct causal link between the policy or custom and the injury alleged." <u>Id</u>. (internal quotation marks omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." <u>Waller v. City & Cty. of Denver</u>, 932 F.3d 1277, 1284 (10th Cir. 2019). In Count Four, plaintiffs claim that TPSD violated J.S.'s constitutional rights to equal protection, procedural due process, and substantive due process.

### 1. Alleged Equal Protection Violation

The injury forming the basis of plaintiffs' equal protection claim in Count Four is McClain's sexual harassment. [Doc. 93, ¶ 219 ("By and through the actions of [ ] McClain, TPSD deprived J.S. of . . . clearly established rights to . . equal protection"), ¶ 223 ("McClain sexual harassment of J.S. was sufficiently severe and pervasive to create a hostile learning environment for J.S. and otherwise deprive J.S. of fair and equitable access to a public education")]. The court acknowledges that sexual assault

and harassment can serve as the underlying equal protection violation for municipal liability. Rost, 511 F.3d at 1124 ("A school district's liability for sexual harassment under the [e]qual [p]rotection clause is analyzed under a municipal liability framework."). Here, plaintiffs assert that TPSD officials "intentionally separated their fifth-grade male students (including J.S.) from their fifth-grade female students and [ ] did so, in whole or in part, based on 'offensive and outdated stereotypes about boys and girls, their behavior, and the discipline and instruction permissible for or required for each." [Doc. 105 at 20 (*citing* Doc. 93, ¶¶ 21-24; Doc. 93-1)]. The SAC alleges that, during a phone call with the Stepps, McClain "acknowledged" his conduct was "generally inappropriate" for a fifth-grade class, and stated he would not have used certain terms or raised certain topics "had fifth grade *girls* been present." [Doc. 93, ¶ 64]. Moreover, McClain explained in a written statement that "having the students in an all-boy setting" allowed him to "have some frank conversations that could not take place in a boy/girl mixed setting." [*Id*. ¶ 25]. The court finds plaintiffs have sufficiently alleged a direct causal link between McClain's sexual harassment of J.S. and TPSD's sex-segregation policy. Therefore, plaintiffs have stated a plausible claim for an equal protection violation against TPSD in Count Four.

## 2.  Alleged Procedural Due Process Violation

The injury forming the basis of plaintiffs' procedural due process claim in Count Four is TPSD's deficient handling of the Title IX process. [Doc. 93, ¶ 220 ("By and through its deliberate indifference and retaliation in response to [p]laintiffs' formal complaint under Title IX, TPSD deprived J.S. of . . . clearly established rights

to . . . equal protection"), ¶¶ 94, 101 ("[I]n response to [p]laintiffs' report of harassment, TPSD removed J.S. from the classroom" and because "there were no other in-school options—no integrated classroom, and no boys room taught by anyone other than McClain—[p]laintiffs had no choice but to accept [d]efendants' proposal for" a "modified schedule" wherein "J.S. would attend only one period of classroom instruction" and "for the remainder of the school day, be kept in the library")]]. The due process rights in question include J.S.'s property interest in a public education and liberty interest in his reputation Talihina Elementary. [*Id.* ¶¶ 217, 228]. It is well-settled that "public school students have a protected property interest in public education and a liberty interest in their reputations, and therefore are entitled to certain procedural due process protections within the educational context." <u>Coutoure</u>, 545 F.3d at 1256 (*citing* <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975)).

Though the SAC alleges a failure of due process on a most basic level, the court ventures no further into this analysis because plaintiffs fail to draw any link between this arbitrary deprivation of J.S.'s property rights and TPSD's segregation policy. Without more, the SAC does not state a viable procedural due process claim in Count Four. The court therefore grants TPSD's Motion as to the underlying procedural due process violation in Count Four.

### 3.    Alleged Substantive Due Process Violation

The Supreme Court recognizes two types of substantive due process claims: "(1) claims that the government has infringed a 'fundamental' right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so

26

arbitrary it shocks the judicial conscience." <u>Doe v. Woodard</u>, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal citations omitted). Here, plaintiffs have pled the latter based on allegations that TPSD permitted McClain to continue teaching fifth graders despite having actual knowledge of his targeted abuse of J.S. [Doc. 105 at 18]. *See* <u>Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist.</u>, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a schoolteacher violates a student's substantive due process rights.").

TPSD argues plaintiffs have not stated a plausible substantive due process violation because their allegations "fall well short" of "the extremely high threshold required for the conduct of a defendant to meet the 'shocks the conscience' standard." [Doc. 100 at 20]. The court agrees, as the SAC fails to allege facts that meet the "high level of outrageousness" standard. *See* <u>Perez</u>, 432 F.3d at 1168 & n.4. The SAC only alleges that TPSD placed a hall monitor outside of McClain's classroom upon notice of his purported harassment and, three days later, removed J.S from said classroom. [Doc. 93, ¶¶ 42, 71-74]. Moreover, plaintiffs fail to draw a link between TPSD's segregation policy and TPSD permitting McClain to continue teaching J.S. after receiving notice of his targeted harassment of J.S. Without more, the SAC does not state a viable substantive due process claim in Count Four. The court therefore grants TPSD's Motion as to the underlying substantive due process violation in Count Four.

## C.   COUNT FIVE | SUPERVISORY LIABILITY

Plaintiffs allege that, by enforcing the school district's unlawful segregation policy, the Board Members and Anderson deprived J.S. of his clearly established

constitutional rights to equal protection, procedural due process, and substantive due process. [Doc. 93, ¶ 230]. Asserting a § 1983 claim based on supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." Dodds, 614 F.3d at 1199. Since "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Thus, to establish supervisory liability, plaintiffs must show that "(1) [each] defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Montoya, 662 F.3d at 1164 (quoting Dodds, 614 F.3d at 1199). Here, only the latter two elements are in dispute.

### 1.    Alleged Equal Protection Violations

To state a supervisory liability claim under § 1983 for violation of the equal protection clause, plaintiffs must show that each "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of" the law's differential treatment of a particular class of person." SECSYS, LLC v. Vigil ("Vigil"), 666 F.3d 678, 688 (10th Cir. 2012); Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (noting the equal protection clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). In other words,

"a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an intended consequence of state action." Vigil, at 658.

The injury forming the basis of plaintiffs' equal protection claim in Count Five is the Board Members' and Anderson's adoption and enforcement of TPSD's segregation policy. [Doc. 93, ¶ 230 ("By adopting, implementing, and enforcing a policy of segregation based on sex . . . [the] Board Members (Russell, Woods, Crank, Blue, Moreland, and Lockhart) and [ ] Anderson deprived J.S. of . . . clearly established rights to . . . equal protection"), ¶ 231 ("Until receiving an order from OSDE to correct its violations of federal law by integrating its classrooms, [d]efendants knowingly, intentionally, and/or recklessly violated both state and federal law and failed to provide to J.S. and option for an equitable, sex-integrated learning environment")]. Anderson and the Board Members contend plaintiffs fail to allege facts which would plausibly show that any alleged injury to J.S. was a result of intentional disparate treatment based on his status as a male student. [Doc. 100 at 23]. The court considers these arguments on a defendant-by-defendant basis.

### i.    Anderson & Lockhart

The SAC alleges that Anderson and Lockhart spearheaded the implementation of TPSD's segregation policy at Talihina Elementary [Doc. 93, ¶ 21], and did so based on "offensive and outdated stereotypes about boys and girls, their behavior, and the discipline and instruction permissible for or required for each." [Doc. 105 (*citing* Doc. 93, ¶¶ 21-24)]; s*ee also* [Doc. 93-1 (OSDE letter expressing "concern[ ] about

statements made by [TPSD] educators indicating that there was in fact an intent to treat Talihina's 5th grade boys and girls differently.")]. Plaintiffs assert this directly resulted in the disparate treatment of J.S. on the basis of sex, including McClain "disciplin[ing]" J.S. with inappropriate harshness and exposing J.S. to "frank conversations" because he was a male student stuck in the "boys' room." [*Id.* (*citing* Doc. 93, ¶¶ 25-26)]. Indeed, McClain has admitted as much in writing. [Doc. 93, ¶ 25]. The court finds plaintiffs have stated a plausible § 1983 claim for an equal protection violation against Anderson and Lockhart, as the SAC alleges these defendants' personal actions had a discriminatory effect and were motivated by a discriminatory purpose. Anderson and Lockhart are not entitled to qualified immunity under these circumstances.

### ii.    *Blue, Crank, Lockhart, Moreland, Russell, Woods*

As members of the Board, the above-named defendants were responsible for the governance and administration of TPSD, including Talihina Elementary. [Doc. 93, ¶¶ 7-11 (*citing* 70 O.S. § 5-117(A))]. The SAC alleges the Board Members were aware of TPSD's segregation policy and either explicitly or tacitly approved of the same [*Id.* ¶ 23]. Plaintiffs assert this directly resulted in the disparate treatment of J.S. on the basis of sex for the same reasons stated in the previous subsection. Accordingly, the court finds plaintiffs have stated a plausible § 1983 claim for an equal protection violation against the Board Members, as the SAC alleges these defendants' personal actions had a discriminatory effect and were motivated by a discriminatory purpose. The Board Members are not entitled to qualified immunity under these circumstances.

### 2.    Alleged Procedural Due Process Violations

The injury that appears to form the basis of plaintiffs' procedural due process claim in Count Five is the complete deprivation of J.S.'s education arising from the Board Members' and Anderson's continued enforcement of TPSD's segregation policy. [Doc. 93, ¶ 235 ("As a result of [d]efendants' adoption (or ratification), implementation, enforcement, and approval of a policy of sex segregation, J.S. and [p]laintiffs have lost the benefits of the free public education to which J.S. is entitled")]. It is well-settled that J.S. has a "legitimate entitlement to a public education as a property interest which is protected by the [d]ue [p]rocess [c]lause. . ." Goss, 419 U.S. at 574. Anderson and the Board Members contend the SAC "simply does not contain any factual allegations regarding a situation implicating J.S.'s procedural due process rights[.]" [Doc. 100 at 21].

The Supreme Court has held that when a "complete deprivation of education" occurs—such as when a student accused of wrongdoing is removed from school for ten days or less—the student at minimum is entitled to "notice and . . . some kind of hearing," though the "timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved." Id. at 578-79. Here, J.S. was not accused of wrongdoing. He accused McClain of wrongdoing and, immediately after the Stepps submitted a Title IX complaint against McClain for sexual harassment, TPSD officials unilaterally removed J.S. from McClain's classroom for approximately six weeks without notice, without any type of hearing, and without providing alternative options for fair and equitable instruction.

[Doc. 93, ¶¶ 94-105]. Viewing these allegations in the light most favorable to plaintiffs, and accepting them as true, the court finds plaintiffs have stated a § 1983 claim for equal protection violations against Anderson and the Board Members. As established in the previous subsection, the Count Five defendants alone possessed the authority to enforce TPSD's segregation policy. Rather than provide the process owed after removing J.S. from McClain's classroom, Anderson and the Board Members chose to continue enforcing the facially unlawful segregation policy. They did so over the Stepp's objections and with knowledge that J.S. was receiving deficient, if any, educational instruction. The court consequently denies the Count Five defendants' Motion as to this underlying procedural due process violation.

### 3.    Alleged Substantive Due Process Violations

According to plaintiffs, the injury forming the basis of their substantive due process claim is the Board Members' and Anderson's deliberate indifference to McClain's known sexual harassment. *See* [Doc. 105 at 18 ("Plaintiffs have alleged activating for which [m]oving [d]efendants are directly responsible: the shocking conduct not of a third party, but of a school employee who [m]oving [d]efendants permitted to continue teaching fifth graders despite actual knowledge of his targeted abuse")]. There are no factual allegations in Count Five of the SAC to support plaintiffs' proposition. Indeed, in the context of § 1983 actions involving multiple claims against multiple defendants, "it is particularly important" for a complaint to "make clear exactly *who* is his alleged to have done *what* to *whom*" so that each defendant has "fair notice as to the basis of the claims" against them. Robbins, 519

F.3d at 1250. This pleading requirement it intended to "ensure[] that defendants know 'the actual grounds of the claim against them,'" in order for defendants to "prepare a defense." <u>Bryson</u>, 534 F.3d at 1287. Plaintiffs have failed to state a claim for a substantive due process violation in Count Five. The court grants the Count Five defendants' Motion as to the underlying substantive due process violation.

### D.    COUNTS SIX AND NINE | RETALIATION UNDER § 1983

"Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation and legal harassment, constitutes an infringement of that freedom." <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir. 2000), *cert denied*, 533 U.S. 916 (2001). The Tenth Circuit has adopted the following test to assess a claim of retaliation for exercising one's freedom of speech "against a defendant who is neither an employer nor a party to a contract with the plaintiff," as is the case here. <u>Id</u>. at 1213. Such a plaintiff must prove: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." <u>Id</u>. at 1212 (citations omitted). Whether a person's exercise of constitutional freedoms would be chilled under the circumstances is a context-dependent question.[10]

---

[10] *See e.g.*, <u>Johnson v. Whitney</u>, 723 Fed. Appx. 587, 594-95 (10th Cir. 2018) (unpublished) (holding that where an inmate made approximately $7 per month and used those funds to purchase necessities, withholding $1.41 from his pay could be sufficiently chilling and was neither de minimus nor trivial); <u>McCook v. Spriner Sch. Dist.</u>, 44 Fed. Appx. 896, 903-05 (10th Cir. 2002) (unpublished)

The moving defendants dispute only the second element, claiming none of the facts alleged would "chill a reasonable individual from continuing to engage in protected activity." [Doc. 100 at 25]. The SAC sets forth the following allegations in, and in connection to, Counts Six and Nine: Anderson and Lockhart exercised authority in the decision to remove J.S. from his classroom and ultimately regulate him to the library, without live instruction, as a result of plaintiffs' Title IX complaint [Doc. 93, ¶¶ 95-13]; Anderson and Lockhart exercised authority in the decision to remove J.S. from his basketball team on a pretextual basis [*Id*. ¶¶ 103-04]; Anderson, Blair, Bryant, and the Board Members conducted a sham investigation and then attempted to force J.S. to either leave school or return to McClain's classroom [*Id*. ¶¶ 131-35]; Lockhart and Russell privately discussed how to handle plaintiffs' complaint and the allegations raised therein [*Id*. ¶ 109]; the Board Members refused to address concerns raised by the Stepps at a Board meeting with respect to McClain's behavior and the ongoing segregation policy [*Id*. ¶ 115-16]; Anderson disclosed plaintiffs' identities as the complainants to third parties and labeled plaintiffs as troublemaking liars after receiving a desegregation letter from OSDE [*Id*. ¶¶ 147-52]; Blair and Bryant embarrassed and punished J.S. upon his return to school and after the OSD letter by making him sit on the floor while his peers sat in chairs [*Id*. ¶¶ 154-58]; and Blair engaged in aggressive and threatening behavior toward plaintiffs' family at a school function after receiving the OSDE letter [*Id*. ¶¶ 139-63].

(finding plaintiffs could prevail on the second element where they alleged their child was forced to move to an out-of-state school after defendants suspended him in retribution for litigation).

### 1.    Count Six | Anderson, Blair, Bryant

The court finds that plaintiffs have stated a plausible § 1983 retaliation claim against Anderson, Blair, and Bryant. Viewing the factual allegations in the light most favorable to plaintiffs, it may be reasonably inferred that the alleged conduct by these three defendants caused plaintiffs an injury that would chill a person of ordinary firmness from filing a Title IX complaint for teacher-on-student sexual harassment. As plaintiffs' right to be free from retaliation for engaging in a protected activity was clearly established at the time of the purported violations, the Count Six defendants are not entitled to qualified immunity at this stage. Thus, the court denies the moving defendants' Motion as to Count Six.

### 2.    Count Nine | TPSD, Blue, Crank, Lockhart, Moreland, Russell, Woods

The court finds that plaintiffs have stated a plausible § 1983 retaliation claim against TPSD and Board Members. At the dismissal stage, plaintiffs' allegations support a reasonable inference that the Board Members were aware of the ongoing retaliation and, at best, failed to intervene—or, at worst, subtly contributed to its continuation. Viewing the factual allegations in the light most favorable to plaintiffs, it may be reasonably inferred that the alleged conduct of TPSD, by and through the Board Members, caused plaintiffs an injury that would chill a person of ordinary firmness from filing a Title IX complaint. As plaintiffs' right to be free from retaliation for engaging in a protected activity was clearly established at the time of the purported violations, the individual Count Nine defendants are not entitled to

35

qualified immunity at this stage. Thus, the court denies the moving defendants' request for Rule 12(b)(6) dismissal of Count Nine.

### E.    COUNT SEVEN | CONSPIRACY UNDER § 1983

At the motion to dismiss stage, a plaintiff need only allege facts demonstrating "an agreement upon a common, unconstitutional goal" and "concerted action" taken "to advance that goal." Janny v. Gamez, 8 F.4th 883, 919 (10th Cir. 2021) (citation omitted). Recognizing that "direct evidence of an agreement to join a conspiracy is rare," the Tenth Circuit has held that a defendant's "assent can be inferred from acts furthering the conspiracy's purpose." Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022). An express agreement is consequently unnecessary. *See* Frasier v. Evans, 992 F.3d 1003, 1024-05 (10th Cir. 2021). Further, while "[t]he participants int eh conspiracy must share the general conspiratorial objective," they "need not known all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." Id. at 1024 (*quoting* Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990)).

The SAC alleges the specific goal of this purported conspiracy was to "deprive" plaintiffs of their "constitutional rights and of statutory rights intended to secure the same (*e.g.*, under Title IX)." [Doc. 93, ¶ 43]. Plaintiffs contend the moving defendants' subsequent actions evidence this agreement to achieve an unlawful purpose. [Doc. 105 at 23]. Such actions include at least three meetings between Anderson and McClain, McClain and Lockhart, and Lockhart and Russell in which the participants expressly discussed the evidence, allegations, and Anderson's premeditated refusal

to provide plaintiffs with information pertinent to the Title IX investigation. [*Id.* (*citing* Doc. 93, ¶¶ 109, 111-13)].

The SAC further identifies specific actions the moving defendants allegedly took to carry out the plan, including but not limited to unlawfully withholding information from plaintiffs regarding their rights under the Title IX process; unlawfully withholding from McLemore (Title IX officer) and plaintiffs pertinent information gathered during the Title IX process; failing to interview the Stepps, J.S., or any corroborating witnesses as part of the Title IX investigation; and failing to permit plaintiffs' review of any evidence or resulting investigative findings before closing the investigation. While these allegations are sufficient to allege the existence of a conspiracy to violate plaintiffs' statutory rights under Title IX, plaintiffs are preempted from holding the moving defendants liable under § 1983 for purported violations of Title IX. *See* Seamons, 84 F.3d at 1233. Notwithstanding, plaintiffs' assertion that each individual moving defendant participated in the conspiracy requires the court to take a closer look at the facts alleged in the SAC.

### 1.    Anderson | Principal of Talihina Elementary

The court finds plaintiffs have adequately alleged that Anderson (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined, and perhaps engendered, the conspiracy by speaking with McClain and Lockhart sometime between August 25 and August 29, 2022 to coordinate how to handle the Title IX complaint; and (3) acted to further the conspiracy by purposefully withholding documentation of her conversations with McClain about his complained-of conduct,

by disclosing plaintiffs' identities as the complainants to other TPSD parents, and by telling other TPSD parents that J.S.'s allegations against McClain were unsubstantiated. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Anderson in Count Seven, as supported by Count Five.

### 2.    Lockhart | TPSD Superintendent & Board Member

The court finds plaintiffs have adequately alleged that Lockhart (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined, and perhaps engendered, the conspiracy by speaking with McClain and Anderson sometime between August 25 and August 29, 2022 to coordinate how to handle the Title IX complaint; and (3) acted to further the conspiracy by prohibiting McLemore from participating in the August 29 meeting with the Stepps and by declining to take any action on concerns raised by the Stepps and other TPSD parents at the September 6, 2022 Board meeting. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Lockhart in Count Seven, as supported by Count Five.

### 3.    Russell | President of the Board

The court finds plaintiffs have adequately alleged that Russell (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy by meeting with Lockhart and Anderson in late-August 2022 to discuss how to handle plaintiffs' Title IX complaint; and (3) acted to further the conspiracy by declining to take any action on concerns raised by the Stepps and other TPSD parents at the

September 6, 2022 Board meeting. The court further finds that plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Anderson in Count Seven, as supported by Count Five.

### 4.   Blue, Crank, Moreland, Woods | Board Members

The court finds plaintiffs have adequality alleged that Blue, Crank, Moreland and Woods (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy when informed of plaintiffs' Title IX complaint and ensuing investigation; and (3) acted to further the conspiracy by installing Blair and Bryant as the new Title IX officers to complete a sham investigation and by declining to take any action on concerns raised by the Stepps and TPSD parents at the September 6, 2022 Board meeting. The court further finds plaintiffs have stated plausible § 1983 claims for equal protection and procedural due process violations against Blue, Crank, Moreland and Woods in Count Seven, as supported by Count Five.

### 5.   Blair and Bryant | Title IX Officers

The court finds plaintiffs have adequately alleged that Blair and Bryant (1) personally participated in the conspiracy to violate plaintiffs' rights; (2) joined the conspiracy in early-September 2022 when they became Talihina Elementary's new Title IX officers; and (3) acted to further the conspiracy by conducting a sham Title IX investigation. However, there are no factual allegations in Count Seven to support the proposition that Blair and Bryant violated plaintiffs' constitutional rights to equal protection or due process. *See* <u>West</u>, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution . . ."). While

the commission of such violations are supported by specific allegations in Count Five as against Anderson and the Board Members, the allegations in Count Seven are insufficient to support the same finding as against Blair and Bryant. *See* <u>Robbins</u>, 519 F.3d at 1250; <u>Bryson</u>, 534 F.3d at 1287. The court concludes plaintiffs have failed to plausibly allege in Count Seven that Blair and Bryant deprived them of any constitutional rights. As plaintiffs have failed to state a § 1983 conspiracy claim against Blair and Bryant, Count Seven is dismissed for failure to state a claim against Blair and Bryant—who are consequently entitled to qualified immunity on the same.

## V.    CLAIMS FOR VIOLATIONS OF OKLAHOMA LAW

Plaintiffs assert five causes of action under Oklahoma law against the moving defendants, alleging negligence and negligent supervision (Count Ten), defamation (Count Twelve), violation of 70 O.S. § 24-157's prohibition against gender discrimination in public education (Count Thirteen), assault (Count Fourteen), and civil conspiracy (Count Fifteen).

### A.    INTRODUCTION / THRESHOLD ISSUES

The moving defendants contend the GTCA renders them immune from liability on all state law claims asserted in the SAC. Anderson and Blair additionally argue that Counts Twelve and Thirteen should be dismissed under Rule 12(b)(6) as such claims are barred by the applicable statute of limitations.

#### 1.    Immunity under the GTCA

Under the GTCA, only a governmental entity or political subdivision can be liable for a tort committed by an employee while acting within the scope of

employment. The GTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." 51 O.S. § 163(C); *see also* 51 O.S. § 152(12) (defining "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment of tasks lawfully assigned by a competent authority."). "An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State, 2003 OK 2, ¶ 4, 63 P.3d 535, 537 (citations omitted). "A government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability." Id. (*citing* Martin v. Johnson, 1998 OK 127, ¶ 28, 975 P.2d 889, 895). The concept of scope of employment is thus tied to whether the employee or the government entity may be liable for a particular act.

TPSD is a "political subdivision" to which the GTCA applies. 51 O.S. § 152(11)(b). And each individual moving defendant falls within the GTCA's definition of "employee." *See* 51 O.S. § 152(7) (defining "employee" as "any person who is authorized to act on behalf of a political subdivision . . ."). A suit against a political subdivision, as a suit against governmental employees, must be based upon the claimant presenting written notice of a claim within one year of the date the loss occurs, or the claim is forever barred. Hathaway v. State ex rel. Med. Research & Tech. Auth., 2002 OK 53, ¶ 8, 49 P.3d 740, 742 (*citing* 51 O.S. § 156(b)). On July 28, 2023, plaintiffs provided TPSD with written notice of their claims for negligence,

41

IIED, assault, "vicarious liability / *respondeat superior,*" and any tort claims available under 70 O.S. § 24-157. [Doc. 93-3 at 2-3]. The GTCA further provides that suit cannot be initiated against a political subdivision unless the claim has been denied in whole or in part. 51 O.S. § 157(A). Because TPSD did not respond to plaintiffs' formal notice, the claims therein were deemed denied by operation of law on October 26, 2023. [Doc. 93, ¶ 174]. Plaintiffs initiated this action within 180 days of that denial—*i.e.*, on April 23, 2024—as required by the GTCA. *See* 51 O.S. § 157(B).

> **2.  Counts Twelve and Fourteen are Barred by the Applicable Statute of Limitations**

The notice requirements of the GTCA do not apply to tort claims against a governmental employee when the plaintiff's claims are based upon allegations that the employee's acts were outside the scope of his or her employment. Spencer v. Nelson, 2024 OK 63, ¶ 16, 557 P.3d 144, 150 (*citing* Pellegrino, ¶ 18, 63 P.3d at 150). Plaintiffs' claims for defamation against Anderson and Blair (Count Twelve) and for assault against Blair (Count Fourteen) are claims that as a matter of law fall outside their scope of employment, and thus fall outside the purview of the GTCA. *See* Hall v. Okla. Dep't of Human Servs., No. 15-CV-670-CVE-TLW, 2016 WL 2903266 at *9 & n.1 (N.D. Okla. May 18, 2016) ("It is settled that intentional torts are outside the scope of employment[.]") (*quoting* Jackson v. Okla. City Pub. Schs., 2014 OK CIV APP 61, ¶ 9, 333 P.3d 975, 978-79); *see also* 51 O.S. § 152(14). Title 12, Section 95 of the Oklahoma Statutes prescribes the limitations period for intentional tort claims— including defamation and assault—and provides in relevant part:

> Civil actions other than for the recovery of real property can only be
> brought within the following periods, after the cause of action shall have

accrues, and not afterwards: . . . **Within one (1) year: An action for libel, slander, assault, battery,** malicious prosecution, or false imprisonment . . .

12 O.S. § 95(A)(4) (emphasis added). Plaintiffs' allegations relating to their defamation and assault claims do not allege any actionable conduct within one year of the filing date of this action. The incidents plaintiffs describe as involving defamation by Anderson occurred in late-September or early-October of 2022. The incidents they describe as involving defamation and assault by Blair occurred in mid-October of 2022. Plaintiffs' defamation and assault claims, filed April 23, 2024, are thus outside the statute of limitations and must be dismissed as a matter of law.

## B.   COUNT TEN | NEGLIGENCE AND NEGLIGENT SUPERVISION

In Count Ten, plaintiffs allege that TPSD and the Board Members breached their duty to exercise reasonable care in controlling the conduct of their agents so as to prevent harm to J.S. by (1) failing to reasonably train, supervise, and discipline McClain; (2) failing to foster an environment, policy, and culture wherein reports of bullying, harassment, and/or unwanted sex-oriented activity are encourages; and (3) failing to institute any policies or procedures compliant with Title IX; (4) failing to implement or enforce any general policy concerning bullying. [Doc. 93, ¶¶ 292-93]. They also allege that TPSD and the Board Members at all times knew of the need to exercise control over their employees, had the ability to do so, and breached their duty to protect J.S. from the known risk of harassment by McClain. [*Id*. ¶¶ 294-96].

### 1. Negligence Claims Against the Board Members

The Board Members contend that plaintiffs' negligence claims should be dismissed because any challenged conduct by them as individual school officials were performed in the scope of their employment. [Doc. 100 at 35]. The court finds, however, that dismissal of the negligence claims against the Board Members is not appropriate at this stage. *See e.g.,* Tuffy's , Inc. v. City of Okla. City, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163 ("Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee acted within the scope of employment at any given time is a question for the trier of fact."); Trant v. Oklahoma, 874 F.Supp.2d 1294, 1307 (W.D. Okla. Mar. 19, 2012) (rejecting GTCA immunity argument where plaintiff alleged malicious, bad faith action). Indeed, the SAC pleads facts asserting the Board Members acted intentionally, recklessly, or beyond the duties of their office. *See* [Doc. 93, ¶¶231, 285, 294]. The court finds plaintiffs have stated plausible negligence claims against the Board Members. The court accordingly denies the Board Members' Motion as to Count Ten.

### 2. Negligence Claims Against TPSD

TPSD argues that plaintiffs' claims for negligence and negligence *per se* are barred by exemptions from liability under the GTCA and are, therefore, subject to Rule 12(b)(6) dismissal. [Doc. 100 at 27]. Plaintiffs concede the school district cannot be held liable for negligence involving certain "policy-level" discretionary functions under 51 O.S. § 155(5), or for its actions adopting legally insufficient anti-bullying and Title IX policies under 51 O.S. § 155(4). According to plaintiffs, however, the

negligence claims against TPSD are not premised on these exempted policy-level or "discretionary" functions. Such claims are instead premised on "TPSD's failure to properly implement" its deficient policies—which is not exempted by § 155(5) of the GTCA. [Doc. 105 at 29].

Given that the discretionary function exemption is to be construed narrowly and "do[es] not apply to tortious acts of government servants in the daily implementation of policy," State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 2010 OK 56, ¶ 11, 238 P.3d 1, 4, the court is not persuaded that dismissal of this aspect of the negligence claim against TPSD is warranted at this stage. Indeed, once a school district is notified of complaints of misconduct and decides to respond, it must proceed in its work with reasonable care and in a non-negligent manner. See Najera v. Indep. Sch. Dist. of Stroud No. 1-54 of Lincoln Cty., 60 F.Supp.3d 1202, 1206 (W.D. Okla. Oct. 7, 2014). Plaintiffs have included sufficient factual content from which it can be plausibly inferred that TPSD's purported response to complaints of misconduct involved the negligent performance of a policy as opposed to a discretionary act of policymaking. The court accordingly denies TPSD's Motion as to Count Ten.

## C. COUNT THIRTEEN | GENDER DISCRIMINATION

Oklahoma House Bill 1775 (the "Act" or "HB 1775") was signed into law on May 7, 2021. The Act, codified in 70 O.S. § 24-157, and its implementing regulations, codified in Oklahoma Administrative Code ("OAC") 210:10-1-23, prohibit the training or teaching of specified subjects in Oklahoma schools. In the present case, plaintiffs allege the moving defendants "required or made part of [their] teaching or coursework

discriminatory principles" prohibited by 70 O.S. §§ 24-157(B)(1)(a), (c), (e), and (g).[11]
[Doc. 93, ¶ 334]. The moving defendants argue Count Thirteen is subject to dismissal
under Rule 12(b)(6) because there is no private right of action for violation of  HB
1775, and because the complained-of conduct occurred before the implementing
regulations went into effect. [Doc. 100 at 32]. According to plaintiffs, however, HB
1775 creates an implied private right of action. [Doc. 105 at 29].

Under Oklahoma law, a private right of action can be implied from a public-
law statute if the following elements are met: (1) the plaintiff is of the class for whose
benefit the statute was created; (2) some indication of legislative intent, explicit or
implicit, suggests that the Legislature intended to create a private remedy, rather
than deny the same; and (3) implying a remedy for the plaintiff would be consistent
with the underlying purpose of the legislative scheme. Owens v. Zumwalt, 2022 OK
14, ¶ 10, 503 P.3d 1211, 1215. The moving defendants only dispute plaintiffs' ability
to meet the second element. In evaluating the second prong, courts must determine
legislative intent by "looking at the precise wording of the [statute] and studying its
history." Holbert v. Echeverria, 1987 OK 99, ¶ 11, 744 P.2d 960, 964.

The court finds no legislative intent, either implied or explicit, in HB 1775 to
create a private remedy for violations of said statute. Rather, the Act is a legislative
grant of authority to the Oklahoma State Board of Education ("OSBE") to

---

[11] The Oklahoma Attorney General and his office are presently enjoined from enforcing certain
portions of HB 1775. *See* Black Emergency Response Team v. Drummond ("Black"), 737 F.Supp.3d
1136 (W.D. Okla. June 14, 2024). This preliminary injunction effects one of the four provisions on
which plaintiffs rely—*i.e.*, "[n]o teacher . . . shall require or make part of a course" the concept that "an
individual should be discriminated against or receive adverse treatment solely or partly because of his
or her race or sex[.]" 70 O.S., § 24-157(B)(1)(c); Black, *supra*, at 1157. *See* [Doc. 93, ¶ 325].

"promulgate rules" and "implement the [Act's] provisions." *See* 70 O.S. § 24-157(B)(2). The penalties set out for violation of the Act are administrative. *See* OAC 210:10-1-23(j). Both state and federal courts have held the second prong unsatisfied where a statute granted regulatory authority to an administrative agency rather than explicitly creating a private right of action within the statute itself.[12] Plaintiffs nevertheless contend that, in exercising its authority to promulgate rules under the Act, the OSBE recognized a private right of action in March of 2022:

> Title VI and Title IX may be enforced by private right of action, whereby aggrieved parties may seek relief, including monetary damages, for violations of federal antidiscrimination laws. Victims of discrimination may file a lawsuit directly against the Public School. In addition to any private rights of action, aggrieved parties may seek applicable remedies through the U.S. Department of Education's Office for Civil Rights or the U.S. Department Justice's Civil Rights Division.

[Doc. 105 at 30 (*citing* OAC 210:10-1-23(o))]. The moving defendants further argue the implementing regulations were not in force at the time they allegedly violated the Act. Indeed, the pertinent regulations went into effect on September 11, 2022. *See* 39 Okla. Reg. 992, 2022 OK REG TEXT 603412 (NS). According to the moving defendants, the underlying conduct which plaintiffs claim violated HB 1775 occurred in August of 2022. [Doc. 93, ¶¶ 31-106]. According to plaintiffs, such underlying conduct spanned from mid-August 2022 to mid-October 2022. [Doc. 100 at 31 (*citing*

---

[12] *See e.g.*, Nichols Hills Physical Therapy v. Guthrie, 1995 OK CIV APP 97, ¶ 9, 900 P.2d 1024, 1026 ("Had the legislature intended to provide an injured patron with the right of private action . . . it would have explicitly done so."); Thomas v. Metro. Life Ins. Co., 540 F.Supp.2d 1212, 1230 (W.D. Okla. Jan. 10, 2008) ("When a statute grants enforcement authority to an administrative agency or officer, this grant implies the legislature did not intend to provide a private right of action."); Risk v. Allstate Life Ins. Co., No. 4-CV-333-CVE-FHM, 2006 WL 2021597 at *3 (N.D. Okla. July 17, 2006) ("In terms of statutory construction, the inclusion of administrative enforcement impliedly excludes a private right of action.") (*citing* Holbert, ¶¶ 15-16, 744 P.2d at 965).

Doc. 93, ¶¶ 133, 138, 141, 153-60)]. The portions of the SAC to which plaintiffs cite set forth allegations that the Title IX investigation was closed on September 17, 2022; OSBE sent TPSD notice to end its segregation policy on September 29, 2022; OSBE's letter directed that TPSD integrate fifth-grade classes at Talihina Elementary by October 10, 2022; and J.S. returned to his first full day of in-class instruction on October 12, 2022.

The court agrees with the moving defendants that "[n]one of these alleged events involved a [TPSD] employee allegedly 'requir[ing] or mak[ing] part of a course' one or more of the concepts prohibited by HB 1175 or its regulations." [Doc. 111 at 9 (*quoting* 70 O.S. § 24-157(B)(1))]. To the extent the Act provides for an implied private right of action against employees of a school district, plaintiffs' claim for violation of HB 1775 against the moving defendants fails because the implementing regulations went into effect *after* their purported violation of the Act. The moving defendants' request for Rule 12(b)(6) dismissal of Count Thirteen is therefore granted.

## D.   COUNT FIFTEEN | CIVIL CONSPIRACY

According to the Oklahoma Supreme Court, the tort of civil conspiracy

> . . . consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the *act* of and the *means employed* are lawful.

Brock v. Thompson, 1997 OK 127, ¶ 38, 948 P.2d 279, 294 (footnotes omitted) (emphasis in original). Here, the parties dispute whether plaintiffs have or can plead facts demonstrating the existence of an "unlawful act." Under Oklahoma law, it is not

necessary that the unlawful act be a criminal act. However, it must be an act which would in itself give rise to tort liability. *See* <u>Gaylord Entm't Co. v. Thompson</u>, 1998 OK 30, ¶ 40, 958 P.2d 128, 148 ("In order to be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means.").

The court finds that plaintiffs have pled facts which could give rise to a tort committed by one or more defendant. The following individual defendants are alleged to have entered into agreements under Count Fifteen: Anderson and Lockhart [Doc. 93, ¶ 350]; Anderson and Russell [*Id*. ¶ 351]; Anderson, Lockhart, Russell, Blue, Crank, Moreland, and Woods [*Id*. ¶ 352]; Bryant and Blair [*Id*. ¶ 353]. The SAC further alleges that those individual defendants agreed "to segregate Talihina Elementary's fifth grade class based on sex, in violation of federal and state law" and/or "*not* to cooperate or to interfere with the Title IX investigation undertaken by Talihina Elementary officials." [Doc. 93, ¶¶ 356-57]. Plaintiffs' allegations are sufficient to state a claim for civil conspiracy under Oklahoma law; therefore, Count Fifteen will survive the moving defendants' dismissal challenge.

## VI.  LIMITATION OF DAMAGES

TPSD contends punitive damages are not available for plaintiffs' claims arising under Title IX, § 1983, or the GTCA. [Doc. 100 at 44-45]. Plaintiffs concede to this contention as it applies to TPSD but argue against dismissal of their requests for punitive damages against the individual moving defendants. [Doc. 105 at 32]. It is well-settled that punitive damages are not available under § 1983 against governmental entities or individuals acting in their official capacities. *See* <u>Brandon</u>

49

v. Holt, 469 U.S. 464 (1985); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Punitive damages are also unavailable under Title IX. *See* Cummings v. Premier Rehab Keller, PLLC, 596 U.S. 212 (2022) (holding punitive damages are not available in Title IX private rights of action against recipients of federal financial assistance for discriminating based on protected characteristics). As for plaintiffs' state law claims, the GTCA expressly provides that punitive damages may not be recovered against a political subdivision such as TPSD. *See* 51 O.S. § 154(C). As a matter of law, TPSD is immune from liability for punitive damages on plaintiffs' claims arising under Title IX, § 1983, and the GTCA.

## VII.  CONCLUSION

Based on the foregoing, the moving defendants' Motion [Doc. 100] is **GRANTED in part** and **DENIED in part**. Following entry of this Order, the status of each operative claim asserted in the SAC against these defendants is as follows:

- ▪ Count One alleging a Title IX gender discrimination claim remains pending against TPSD.

- ▪ Count Two alleging a Title IX sexual harassment claim remains pending against TPSD.

- ▪ Count Three alleging a Title IX retaliation claim remains pending against TPSD.

- ▪ Count Four alleging a § 1983 municipal liability claim based on violation of J.S.'s constitutional right to equal protection remains pending against TPSD. The alleged due process violations underlying Count Four are dismissed for failure to state a claim against TPSD.

- ▪ Count Five alleging § 1983 supervisory liability claims based on violations of J.S.'s constitutional rights to equal protection and procedural due process remain pending against Anderson, Blue, Crank, Lockhart, Moreland, Russell and Woods in their individual capacities. The alleged substantive due process violations underlying Count Five are dismissed for failure to state a claim against the Count Five defendants.

- <u>Count Six</u> alleging a § 1983 retaliation claim based on violation of the First Amendment remains pending against Anderson, Blair, and Bryant in their individual capacities.

- <u>Count Seven</u> alleging a § 1983 conspiracy claim based on violations of plaintiffs' constitutional rights to equal protection and procedural due process remains pending against TPSD as well as Anderson, Blue, Crank, Lockhart, Moreland, Russell and Woods in their individual capacities. The alleged substantive due process violations underlying Count Seven are dismissed for failure to state a claim against TPSD and those individual defendants in their personal capacities. Moreover, Count Seven is dismissed for failure to state a claim against Blair and Bryant in their individual capacities.

- <u>Count Nine</u> alleging a § 1983 retaliation claim based on violation of the First Amendment remains pending against TPSD as well as Blue, Crank, Lockhart, Moreland, Russell, and Woods in their individual capacities.

- <u>Count Ten</u> alleging claims for negligence, negligent supervision, and negligence *per se* remain pending against TPSD, Blue, Crank, Lockhart, Moreland, Russell, and Woods.

- <u>Count Twelve</u> alleging defamation claims are dismissed for failure to state a claim against Anderson and Blair within the one-year limitations period provided by 12 O.S. § 95(4).

- <u>Count Thirteen</u> alleging violations of HB 1775's prohibition against gender discrimination in public education is dismissed for failure to state a claim against TPSD, Anderson, Blair, and Lockhart.

- <u>Count Fourteen</u> alleging an assault claim is dismissed for failure to state a claim against Blair within the one-year limitations period provided by 12 O.S. § 95(4).

- <u>Count Fifteen</u> alleging a civil conspiracy claim under Oklahoma law remains pending against each moving defendant.

- Plaintiffs' prayer for punitive damages is stricken insofar as it relates to TPSD (Counts One, Two, Three, Four, Nine and Ten) and remains pled insofar as it relates to the individual moving defendants.

**IT IS SO ORDERED** this 29th day of April, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE